## GRIFFIN *v.* GRIFFIN.

No. 86.  Argued December 10, 1945.—Decided February 25, 1946.

222

Petitioner argued the cause and filed a brief *pro se.*

*A. M. Goldstein* argued the cause and filed a brief for respondent.

MR. CHIEF JUSTICE STONE delivered the opinion of the Court.

This is a suit brought in the district court of the District of Columbia, in which respondent sought to recover the amount of a judgment which she had secured against petitioner in 1938 in the Supreme Court of New York for arrears of alimony. The question for decision is the extent to which due process permits the New York adjudication to be made the basis for recovery in another jurisdiction.

The record abounds in confusing and irrelevant matter, but the following facts may be gleaned from the papers in the New York court proceedings which it contains. On June 24, 1924, the Supreme Court of the State of New York entered its interlocutory judgment divorcing respondent from petitioner, which judgment was, in 1926, modified to provide that petitioner should pay to respondent alimony in the sum of $3,000 annually in equal monthly installments. Both parties were then residents of New York, and the divorce action was contested. Petitioner left New York in 1929, and though he has returned to the jurisdiction intermittently since that time, the record does not show whether he ever again took up residence there. Petitioner was a resident of the District of Columbia at the time this suit was begun.

In 1935 respondent moved in the original divorce proceeding to punish petitioner for contempt for his failure to pay installments of alimony as directed by the decree of divorce, and petitioner, in conformity to New York procedure, made a cross-motion to modify the original judgment by reducing past due and future installments of alimony. Thereupon the New York court entered an order referring to a referee for determination two of the issues of fact raised by the motions, (a) the amount of unpaid installments of alimony due from petitioner to respondent, and (b) petitioner's then ability to pay them. These questions were litigated by the parties in contested

hearings before the referee, whose report of January 7, 1936, found the amount then due from petitioner to respondent as arrears of alimony, and that petitioner had failed to present any credible testimony showing his inability to pay. The New York supreme court then entered its order of February 25, 1936, declaring that there was due from petitioner to respondent for the period ending October 25, 1935 alimony arrears and accrued interest in the sum of $18,493.64. Petitioner's appeal from this order to the Appellate Division of the New York supreme court was dismissed for want of prosecution.

Some time later, respondent made a further motion in the supreme court for an order directing the county clerk to enter as a money judgment the arrears of alimony due and unpaid under the judgment of divorce. This motion was granted, and an order was entered February 19, 1938 directing the clerk to docket a judgment in favor of respondent against petitioner in the sum of $25,382.75. As indicated in the order this amount was made up of the following items:

| | |
|---|---|
| Installments of alimony accrued to October 25, 1935, found due by the order of the supreme court of February 25, 1936 | $18,493.64 |
| Interest on this amount to date of entry of the 1938 order | 2,589.11 |
| Installments of alimony due from October 25, 1935, to the date of the 1938 order | 3,750.00 |
| Interest on these installments | 550.00 |
| | $25,382.75 |

A judgment that respondent recover this amount from petitioner and have execution upon it was entered by the clerk on February 23, 1938. Both the order of February 19, 1938 and the judgment upon it were entered ex parte, without notice to petitioner, as then seems to have been

permitted under § 538 of the New York Civil Practice Act. *Thayer* v. *Thayer,* 145 App. Div. 268, 129 N. Y. S. 1035 (1st Dept.).[1] Petitioner, by his answer in the present suit on this judgment, set up as defenses that the judgment of February 1938 was entered without notice to him, and was for that reason null and void for want of due process, and also "because of gross fraud in its incidents, and in its procurement, and in its making and entry, and in its monetary contents, and in the amount claimed to be due and owing under it," and so was not entitled to any recognition in the District of Columbia.

On motion for summary judgment, supported by pleadings, affidavit and admissions establishing the several judgments, orders and records of the New York supreme court to which we have referred, the district court ordered summary judgment in the sum of $25,382.75, with interest from February 23, 1938. The court of appeals for the District affirmed without opinion. We granted certiorari, 326 U. S. 705, on a petition which urges the sufficiency of the defenses raised below.

By Rule 56 (d) of the Rules of Civil Procedure, the court, on a motion for summary judgment, is required to

---

[1] Since the entry of the 1938 judgment, § 1171–b of the New York Civil Practice Act has been added by Laws of 1939, Ch. 431, amended, Laws of 1940, Ch. 226, so as to provide:

"§ 1171–b. Enforcement by execution of judgment or order in action for divorce, separation or annulment. Where the husband, in an action for divorce, separation, annulment, or declaration of nullity of a void marriage, makes default in paying any sum of money as required by the judgment or order directing the payment thereof, the court may make an order directing the entry of judgment for the amount of such arrears, together with ten dollars costs and disbursements. *The application for such order shall be upon such notice to the husband as the court may direct.* Such judgment may be enforced by execution or in any other manner provided by law for the collection of money judgments. The relief herein provided for is in addition to any and every other remedy to which the wife may be entitled under the law." (Italics supplied.)

ascertain by examination of the pleadings and the evidence before it what material facts exist without substantial controversy and what material facts are actually and in good faith controverted, and thereupon to make an order specifying the facts that appear without substantial controversy, and directing such further proceedings in the action as are just. For the purposes of the trial it is provided that the facts so specified shall be deemed established and the trial conducted accordingly. In the present state of the record, and in order that the summary judgment procedure may be properly followed, it becomes necessary to determine what facts appear without substantial controversy, and in the light of those facts to direct such further proceedings in the action as are just.

Of controlling significance in this case are the following uncontroverted facts of record: the judgment or decree rendered by the New York supreme court in 1926 directing annual payments of alimony in the sum of $3,000; the order of the New York supreme court in the same proceeding determining as a result of an active litigation between the parties that as of February 25, 1936, there was due and payable from petitioner to respondent arrears of alimony in the sum of $18,493.64, representing installments accrued to October 25, 1935, with interest to that date, and that petitioner was not entitled to any reduction in the amount due; and finally, the judgment of the New York supreme court of 1938, which incorporated in the amount adjudged to be due the arrears of alimony with interest found by the 1936 order to have accrued to October 25, 1935.

We have examined the New York law, and conclude that the 1926 New York alimony decree was, under the New York practice, subject to some power of modification *nunc pro tunc* as to alimony accrued but unpaid up to the time of modification. See New York Civil Practice Act,

§ 1170; Laws 1925, Ch. 240.[2]  Under the local practice, alimony which has accrued under a decree of divorce may not be collected by execution unless and until a judgment for the amount of alimony accrued but unpaid is docketed by order of the court which issued the decree.  *Thayer* v. *Thayer, supra; Ostrin* v. *Posner,* 127 Misc. 313, 215 N. Y. S. 259.  And upon a motion to docket as a judgment, arrears of alimony awarded under a prior decree, the husband may defend on the grounds that the alimony or some part of it is not due because of the death or remarriage of the wife, *Kirkbride* v. *Van Note,* 275 N. Y. 244, 9 N. E. 2d 852; or that the obligation has been discharged by payment or otherwise, *Karlin* v. *Karlin,* 280 N. Y. 32, 19 N. E. 2d 669; or that circumstances have so changed as to justify a reduction of alimony already accrued by modification of the alimony decree, *Van Dusen* v. *Van Dusen,* 258 App. Div. 1020, 17 N. Y. S. 2d 96 (3d Dept.); *Cunningham* v. *Cunningham,* 261 App. Div. 973, 25 N. Y. S. 2d 933, 934 (2d Dept.); *Eisinger* v. *Eisinger,* 261 App. Div. 1031, 26 N. Y. S. 2d 22 (3d Dept.).

---

[2] The New York law described in *Sistare* v. *Sistare,* 218 U. S. 1, decided in 1910, differs significantly from the more recent New York law which governs this case, as will be seen from the authorities cited. Ch. 240 of the Laws of 1925 amended § 1170 of the Civil Practice Act so as to provide in part: "Where an action for divorce or separation is brought by either husband or wife, the court, except as otherwise expressly prescribed by statute, must give, either in the final judgment, or by one or more orders, made from time to time before final judgment, such directions as justice requires, between the parties, . . . where the action is brought by the wife, for the support of the plaintiff. The court, by order, upon the application of either party to the action, . . . after due notice to the other, to be given in such manner as the court shall prescribe, at any time after final judgment, may annul, vary or modify such directions, or in case no such direction or directions shall have been made, amend it by inserting such direction or directions as justice requires . . . for the support of the plaintiff in such final judgment or order or orders. . . ."

Concededly the 1938 judgment was entered without actual notice to or appearance by petitioner, and without any form of service of process calculated to give him notice of the proceedings. Compare *International Shoe Co.* v. *Washington,* 326 U. S. 310, 320–321. Because of the omission, and to the extent that petitioner was thus deprived of an opportunity to raise defenses otherwise open to him under the law of New York against the docketing of judgment for accrued alimony, there was a want of judicial due process, and hence want of that jurisdiction over the person of petitioner prerequisite to the rendition of a judgment *in personam* against him. *McDonald* v. *Mabee,* 243 U. S. 90; cf. *Webster* v. *Reid,* 11 How. 437, 459. The only indication in the record as to petitioner's residence at the time of the entry of the 1938 judgment is a recitation in the judgment itself that he was then a resident of the District of Columbia. But it is immaterial for present purposes whether or not petitioner was a domiciled resident of New York at the time, either within or temporarily without the State, or a resident of some other jurisdiction. It is plain in any case that a judgment *in personam* directing execution to issue against petitioner, and thus purporting to cut off all available defenses, could not be rendered on any theory of the State's power over him, without some form of notice by personal or substituted service. *Wuchter* v. *Pizzutti,* 276 U. S. 13, 18–20; Restatement of Conflict of Laws, § 75; and compare *Milliken* v. *Meyer,* 311 U. S. 457. Such notice cannot be dispensed with even in the case of judgments *in rem* with respect to property within the jurisdiction of the court rendering the judgment. *Roller* v. *Holly,* 176 U. S. 398, 409.

A judgment obtained in violation of procedural due process is not entitled to full faith and credit when sued upon in another jurisdiction. *National Exchange Bank* v. *Wiley,* 195 U. S. 257; *Old Wayne Life Assn.* v. *Mc-*

*Donough,* 204 U. S. 8, 23; *Baker* v. *Baker, Eccles & Co.,* 242 U. S. 394, 401. Moreover, due process requires that no other jurisdiction shall give effect, even as a matter of comity, to a judgment elsewhere acquired without due process. Restatement of Judgments, § 11, Comment *c.*

While it is undoubtedly true that the 1926 decree, taken with the New York practice on the subject, gave petitioner notice at the time of its entry that further proceedings might be taken to docket in judgment form the obligation to pay installments accruing under the decree, we find in this no ground for saying that due process does not require further notice of the time and place of such further proceedings, inasmuch as they undertook substantially to affect his rights in ways in which the 1926 decree did not.[3] By § 1170 of the New York Civil Practice Act, petitioner was afforded the opportunity to move to modify the alimony decree *nunc pro tunc.* The right afforded by that section is a substantial one, and may, under the law of New York, be exercised by him, in effect by way of defense, in addition to the defense of payment, in a proceeding begun by his wife to docket a judgment for accrued alimony. See *Van Dusen* v. *Van Dusen, supra; Cunningham* v. *Cunningham, supra; Eisinger* v. *Eisinger, supra.* As we read the 1938 judgment, which recited that the alimony was "due and unpaid," and directed the issuance of execution for its collection, it purported to cut off any defense of payment or claim under § 1170, which petitioner might have been prompted to assert, and which he

---

[3] We do not share in the apprehension that the cost of providing such notice as will satisfy due process requirements each time a proceeding is begun to docket a judgment for an accrued installment of alimony will be incommensurately high. In various statutes New York has been able to provide for notice by mail, which is reasonably adapted to provide actual notice and inexpensive in its operation. New York Civil Practice Act, § 229–b; New York Real Property Law, § 442–g; New York Vehicle and Traffic Law, §§ 52, 52–a; see also *Durlacher* v. *Durlacher,* 173 Misc. 329, 17 N. Y. S. 2d 643.

had the right to assert in the very proceeding which culminated in the judgment sued upon.[4]   That right could not be rendered nugatory by failure to give him notice of that proceeding.

It is said that we must presume that the New York practice requires that a judgment for accrued alimony which has been docketed without notice must, quite apart from due process requirements, be set aside on the defendant's application showing to the court that he had a defense to the claim for accrued alimony.[5]   From this it is said to follow that the 1938 judgment did not deprive petitioner of any right which he previously had, or of any

---

[4] A judgment procured by fraud may be vacated on that ground in the State of its rendition, and the fraud may perhaps be urged as a defense against its enforcement elsewhere.   But a demonstration that the alimony has been paid would not necessarily establish that a judgment for arrears had been fraudulently procured by the wife's false representations to the court that they had not been paid.   There are many instances in which a finding of payment will have turned on substantial questions of fact or law upon which a defendant was entitled to be heard, but as to which it could not be said that his antagonist had practiced fraud on the court.   Moreover, some available defenses other than payment, as for example, change of the husband's circumstances, are of such nature as to afford no basis for attacking the judgment as fraudulent.

[5] In *Thayer* v. *Thayer*, 145 App. Div. 268, 270–271, 129 N. Y. S. 1035, it was said by way of dictum, "If the court is misled and an installment improperly docketed, the defendant will find no difficulty in having the mistake corrected."   But that case was decided before the adoption of § 1170 of the New York Civil Practice Act permitting the modification of any alimony decree *nunc pro tunc* by reducing the amount of accrued alimony.   See note 2, *supra*.   We cannot assume that the "mistake" contemplated by that opinion was one not relating to payment or discharge.   Whether under New York practice a judgment for accrued alimony, docketed without notice, could be opened and the amount of accrued alimony reduced *nunc pro tunc*, remains a matter for speculation.   In any case, § 1170 itself does not appear to authorize a motion to set aside a judgment docketed for alimony accrued under an earlier decree directing payment of installments of alimony.

defense which he might have been entitled to make, and that therefore the judgment is not wanting in due process. The argument then runs that since such a judgment satisfies due process it is entitled to as much faith and credit in other jurisdictions as it has in New York. This, it is suggested, means that the judgment may be made the basis of suit in another jurisdiction, but subject there to all those defenses which would be grounds for setting it aside in New York.

But if want of notice were, without more, a sufficient ground for setting aside the judgment under the New York practice, this could hardly be held to amount to anything more than recognition by New York of the constitutional precept that a court may not act to give a personal judgment in the absence of notice. If New York, by its practice, recognizes the ineffectiveness of such a judgment, that could not be made a ground for giving the judgment effect elsewhere more than any other judgment rendered without notice. It might as well be said that any judgment which does not validly cut off defenses because rendered without due process may be made the basis of suit elsewhere subject to those defenses. To the extent that New York refuses, if it does refuse, to set aside the judgment of 1938 unless there be some affirmative showing that there was a meritorious substantive defense to its entry, there is an assertion of power in the court to enter a money judgment and issue execution upon it without notice. The assertion for the first time by the 1938 judgment of power to adjudicate petitioner's liability for accrued alimony and to direct its enforcement by execution, see *Thayer v. Thayer, supra,* does not differ in its nature and constitutional effect from the like assertion of power to issue execution by any other judgment rendered without notice.

Due process forbids any exercise of judicial power which, but for the constitutional infirmity, would substantially affect a defendant's rights. To the suggestion that under

the presumed New York practice the power asserted by the judgment does not include the final adjudication of any of the defenses which petitioner might have had, and that notice is therefore not required, the answer must be that the judgment authorizes the immediate issuance of execution. We are unable to reconcile the direction that petitioner's property be seized on execution to satisfy an obligation for the first time found by the judgment to be "due and unpaid" with the theory that the obligation is, for constitutional purposes, thus only tentatively adjudicated. There can be no doubt that a levy upon any property petitioner might have in New York would substantially, and in at least some instances, permanently affect his rights. We cannot say that this could be done without notice of the proceeding said to justify the levy. Even though petitioner could, if he knew of the judgment before execution is actually levied, move to set the judgment aside, that could not save the judgment from its due process infirmity, since it and the New York practice purport to authorize the levy of execution before petitioner is notified of the proceeding or the judgment.

Since by virtue of the due process clause the judgment is ineffective in New York to adjudicate petitioner's rights for enforcement purposes, it cannot be made the instrument for enforcing elsewhere the obligation purportedly adjudicated by it. And even if we were to say that by virtue of the New York practice, and without reference to due process, the 1938 judgment is not an assertion of judicial power to bind petitioner's property for the obligation which the judgment purports to establish, such a judgment would obviously add nothing to the 1926 decree as a basis for enforcing the obligation in another jurisdiction. Neither the judgment nor the earlier decree would do more than establish the original obligation to pay alimony subject to defenses which the supposed New York practice would preserve if due process did not.

It follows that to the extent that the 1938 judgment purports to adjudge as due and owing arrears of alimony accrued since October 25, 1935, the end of the period covered by the 1936 order, it is ineffective to establish petitioner's personal liability, or to deprive him of defenses to his asserted liability for those arrears.

But the 1938 judgment, so far as it confirmed the adjudication of the amount of alimony and interest due as of October 25, 1935, stands on a different footing. It has not been suggested, and we have not found any New York authority holding, that any of the questions with respect to payment or to the modification of the alimony decree *nunc pro tunc* which petitioner raised or might have raised in the 1936 proceedings were thereafter open to him as to the accrued installments which were the subject of his motion to modify the decree. The 1936 order became final upon the dismissal of petitioner's appeal from it, and was an adjudication between the parties that arrears of alimony were then due and owing by petitioner to respondent in the specified amount. As we said in *Barber* v. *Barber*, 323 U. S. 77, 82, paraphrasing *Sistare* v. *Sistare*, 218 U. S. 1, where a decree for alimony is made the basis of an action in another jurisdiction, " 'every reasonable implication must be resorted to against the existence of' a power to modify or revoke installments of alimony already accrued 'in the absence of clear language manifesting an intention to confer it.' "

Defenses which might otherwise have been open to petitioner in the 1938 proceeding with respect to alimony accrued to October 25, 1935 must thus be taken as having been foreclosed by the 1936 proceedings, of which petitioner had actual notice, and in which he actively participated. The 1938 judgment, so far as it confirmed the 1936 order by which petitioner was already bound, impaired no rights of petitioner, and foreclosed no defense which he had not had opportunity to offer. Due process does not

require that notice be given before confirmation of rights theretofore established in a proceeding of which adequate notice was given.

. Upon the facts shown, respondent was therefore entitled to maintain the present suit on the 1938 judgment for the amount, with interest, thus adjudicated to be due by the order of 1936, and as so adjudicated, confirmed by the judgment of 1938. For in *Sistare* v. *Sistare, supra,* we held that the full faith and credit clause of the Constitution required a Connecticut court to render judgment for past due installments of alimony which had accrued under a New York decree for future alimony, the right to which we held had become vested under the then existing New York law, even though the decree might be subject to modification prospectively as to future installments by further orders of the New York court.

We have said that the failure to give petitioner notice of the 1938 proceeding did not prejudice him as to any of the defenses which he might have raised in the 1936 proceeding. But although it purported to do so, the 1938 judgment, because rendered without notice, could not foreclose defenses going to the discharge of the obligation established by the order of 1936, and arising since its date. It follows that, upon further proceedings upon the remand of this cause to the district court, respondent will be taken as having established the amount of alimony accrued to October 25, 1935 remaining due and unpaid as of February 25, 1936, subject to any subsequent defense going to the discharge of the obligation so established, which petitioner should be permitted to raise, if any he has.

In the present state of the record, and because of the limited nature of the questions presented and argued here, we do not determine the extent to which respondent may, upon such further proceedings as are appropriate on the return of this case to the district court, recover, upon the

1926 decree, installments of alimony which have accrued since October 25, 1935. While the 1926 decree is in the record and must be the foundation of any right respondent has to recover arrears of alimony accruing since October 25, 1935, her pleadings make it sufficiently clear that the present suit was based upon the 1938 judgment rather than upon the decree. If respondent is entitled to base a suit for installments of alimony accruing after October 25, 1935 on the 1926 decree, she has misconceived her cause of action as to those installments by seeking to recover them by virtue of the 1938 judgment, which is invalid as to them because obtained without notice. But petitioner is not to be prejudiced by respondent's mistake, for since he was entitled to regard the suit as one upon the judgment, he was not required to interpose defenses which would be apt if the suit were upon the 1926 decree. The suit on the 1938 judgment, in its present form, is not to be viewed as if it were on the 1926 decree, a new and different cause of action, and petitioner is not to be penalized for not having already raised his defenses to a claim not presented by respondent's pleadings. In remanding we leave the district court free to consider whether respondent, upon issues appropriately framed in conformity to the summary judgment procedure, or by amended pleadings, may recover on the basis of the 1926 decree, arrears of alimony accruing since October 25, 1935.[6]

Only a word need be said as to petitioner's defense that the judgment was procured by fraud. Although his answer pleads his legal conclusion that the judgment is not entitled to recognition because "of gross fraud in its incidents, and in its procurement," etc., etc., his answer sets up no facts showing the alleged fraud. A part of his answer and an unverified statement filed by petitioner

---

[6] See *Barber* v. *Barber*, 323 U. S. at 81; Jacobs, The Enforcement of Foreign Decrees for Alimony (1939), 6 Law & Contemporary Problems, 250, 263-4.

in response to the motion for summary judgment were ordered stricken by the trial court, evidently because .irrelevant and scandalous. In these the charge of fraud is elaborated by general statements that the machinations of the New York counsel of the parties, and their racial, religious and political affiliations with the judges who have presided over the various phases of the New York litigation, have resulted in the failure of justice exemplified by the several decisions adverse to petitioner. We have examined these assertions and find that the only support for them, so far as appears, is petitioner's unsupported suspicions. We thus find no basis for the allegation that. the judgment was procured or in some way affected by fraud, or for the contention that the offensive matter was improperly stricken. We have examined, but find it unnecessary to discuss various other of petitioner's contentions, which are likewise without merit.

The judgment will be reversed and the case remanded for further proceedings in conformity to this opinion.

*So ordered.*

MR. JUSTICE JACKSON took no part in the consideration or decision of this case.

MR. JUSTICE RUTLEDGE, dissenting in part.

I concur in the opinion except as it holds or implies that the 1938 New York judgment is invalid and therefore is not entitled to full faith and credit in so far as it includes instalments of alimony accruing after October 25, 1935, and interest upon them.

The Court apparently regards the judgment as invalid to this extent because, under the New York procedure, it was docketed without notice to the petitioner additional to the notice he had received in the original proceeding for divorce which resulted in the 1924 decree modified in 1926

to provide for the monthly accrual and payment of these instalments.

The bases for this view seem to rest in two assumptions. One is that the 1938 judgment, except as to the arrears accumulated to October 25, 1935, is precisely the same as any other money judgment and therefore falls within the prohibition of *Pennoyer* v. *Neff*, 95 U. S. 714. In this view the absence of further notice is equivalent to the absence of any; and the judgment becomes invalid for want of due process for purposes of local enforcement as well as for receiving full faith and credit in other jurisdictions.[1] The second assumption is that the docketing of the judgment cut off petitioner's right to make any of the defenses, relating to matters arising after entry of the 1924 decree, which by the law of New York he was entitled to make (and which he did make in 1935 concerning arrears then accrued) at any time prior to docketing of the judgment. I am unable to accept either of these assumptions.

## I.

If it were clear, as the Court seems to hold, that petitioner's right to make the allowable defenses was extinguished under the New York law by the docketing of the judgment, we would be confronted with the necessity of determining whether that fact would bring the case within the rule and the reason of *Pennoyer* v. *Neff*, *supra*,

---

[1] ". . . the duly attested record of the judgment of a state is entitled to such faith and credit in every court within the United States as it has by law or usage in the state from which it is taken." *Adam* v. *Saenger*, 303 U. S. 59, 62; *Hanley* v. *Donoghue*, 116 U. S. 1, 5; *Hampton* v. *M'Connel*, 3 Wheat. 234; *Mills* v. *Duryee*, 7 Cranch 481; 28 U. S. C. § 687.

In this case we are not concerned with the possible exception to the general rule implicit in the situation presented by *Williams* v. *North Carolina*, 325 U. S. 226, that a decree for divorce, although not entitled to full faith and credit in other States, still may be valid as a matter of due process in the State where rendered.

and later cases following that decision.[2] In that event, the question to be decided would be whether it is within the power of a State to provide that, after full notice and hearing in a judicial proceeding resulting in a decree for alimony to be paid in monthly instalments indefinitely, those instalments should or might be docketed in the form of judgments for specific amounts as they accrue without further notice to the defendant; but with the qualification that he should have the right to come in at any time before an instalment is docketed and show that the circumstances comprehended by the original decree have so changed as to entitle him to reduce or terminate the payments. The effect of such a provision would be simply to put upon the defendant, against whom the decree had been rendered, the burden of bringing to the court's attention and proving the changed situation.

It is difficult to see how such a provision could constitute a want of due process or of notice in the jurisdictional sense contemplated by the *Pennoyer* v. *Neff* line of decisions. Nor has this Court so held heretofore. By the very terms of the alimony decree it is adjudicated that the defendant is liable to pay the instalments as they accrue. And also by its terms, together with the applicable statutes, he is notified that the instalments will be, or may be, docketed as judgments enforceable by execution, unless he takes the initiative in showing to the court before the accrual date, or any later time when the plaintiff may move for entry of judgment, that new conditions have arisen requiring or justifying change or termination. Moreover, in addition to the notice petitioner had received from the original decree and the applicable statutes, he received further notice from the 1936 order, entered after

---

[2] See *McDonald* v. *Mabee*, 243 U. S. 90; *Milliken* v. *Meyer*, 311 U. S. 457. See also Restatement, Judgments, § 6, Comment *b*; § 16, Comment *b*; Burdick, Service as a Requirement of Due Process in Actions in Personam (1922) 20 Mich. L. Rev. 422.

contest, by virtue of the court's finding that he then had no sufficient ground for securing a reduction, although he had contended that he was financially unable to meet these payments.

I cannot understand why such notice, clearly and unequivocally given in advance, is not sufficient both to inform the defendant fully of his peril and to afford full constitutional protection for his rights.[3] On the other hand, to compel the wife to give additional notice before docketing of each instalment is to shift to her the burden which the original decree places squarely on the husband. Moreover, in many cases where the amount of the monthly or weekly instalment is small, the effect will be practically to nullify the provision for payment of alimony, because the cost of publishing or otherwise giving notice will equal or exceed the amount of the instalment.[4] A more perfect tool hardly could be given to an absent or absconding husband for defeating the substance of the award.

---

[3] Cf. notes 9 and 13.

[4] It is no answer to say that the wife may reduce the cost of publication or giving other form of notice by allowing the instalments to accrue over long periods of time and then moving for entry of judgment in the aggregate sum, as the wife was forced to do in this case. The very purpose of the provision for payment by instalments, rather than in a lump sum, is to assure that the wife shall have them as they accrue, as much as it is that the husband shall be allowed to earn them as time goes along. She may be dependent for support of herself and children more upon the promptness of the payments than upon their ultimate certainty. And any technical requirement for notice additional to that given by the original decree can only result in depriving the wife of her right to prompt payment, if the husband can take advantage of the requirement and the small amount of the instalments to compel her to let them accumulate. Because delay so often results in loss of substantial rights, the effect frequently will be also to make impossible the ultimate as well as the immediate collection of what is due; and to substitute a right of lifelong litigation for one of certain means of subsistence. The facts of this case afford abundant illustration of both possibilities.

Due process does not require that notice of suit be given more than once or, when this has been done and a valid judgment entered, that additional notice must be given before execution, original or *alias*.[5]   Jurisdiction over the person having been obtained in the original proceeding on adequate notice, further steps in the proceedings are largely within the court's discretion, except in so far as they are controlled by statute, including proceedings after judgment and on execution.   True, these later steps may not be taken arbitrarily.[6]   But that limitation does not require the giving of notice at each successive stage as upon the original service of summons.   Nor does it forbid the court or the legislature to place upon the defendant or other parties responsibility for keeping themselves informed concerning the progress of the cause.   Judgment by default, without further notice than a statutory warning to take steps to ward it off, is an everyday occurrence. After judgment the burden of taking the initiative to avoid the adjudication's effect falls even more heavily upon the defendant.   Unless he assumes and discharges it, he cannot hold up execution for want of special notice that authorized steps to reach his property are about to be taken.   Generally speaking, the stage of execution is committed largely to the plaintiff's control; and that notice must be given to the defendant at that stage before his property within the court's jurisdiction can be taken to satisfy the judgment is foreign both to accepted conceptions of due process and to generally prevailing statutory schemes for securing satisfaction.

In accordance with these principles, if an ordinary money judgment were entered for a fixed sum, but with authorized provision for payment in instalments over a

---

[5] See *Endicott Johnson Corp.* v. *Encyclopedia Press*, 266 U. S. 285; *Taylor* v. *Stowe*, 218 Mass. 248, 105 N. E. 890.

[6] See *Brown* v. *Brown*, 62 R. I. 375, 6 A. 2d 144; *State ex rel. Lane* v. *Montgomery*, 221 Mo. App. 1043, 295 S. W. 824.

definite period, to be collected by levy upon failure to pay any instalment when due, I fail to see what conceivable constitutional objection could be raised against the judgment or any such levy by reason of failure to give notice of the intended levy. Nor do I see how such a scheme could be vitiated were the State additionally to require that the levy, instead of being made automatically or ministerially at the plaintiff's instance, should be made only after further order of the court, entered either of its own motion or on application of the plaintiff. Whether judgments shall be paid in a lump sum or by instalments and in either event whether execution shall issue and be levied by one form of procedure or another, with or without further notice, are matters wholly of policy within state power to determine, raising no question of constitutional import.

These principles are not altered fundamentally merely because, in proceedings for divorce, the decree provides that monthly instalments shall continue for the period of need, in accordance with the duty to support imposed by marriage and the birth of children,[7] and take the place of a lump sum payment fixed in amount.[8] Nor do they become inapplicable because the State sees fit, as a matter

[7] There are two principal theories as to the nature of alimony. The modern view is that alimony "is a right of the same character as the right of support lost by the dissolution of the marriage." The historical view is that alimony "is a settlement of the property rights of the parties and a distribution of the assets of the quasi-partnership hitherto existing." Kelso, The Changing Social Setting of Alimony Law (1939) 6 Law & Contemp. Prob. 186, 194–195; *Wilson* v. *Hinman,* 182 N. Y. 408, 410–412, 75 N. E. 236.

[8] The duty of support, incurred upon marriage, is not merely the duty of a debtor arising upon a commercial transaction for the payment of a fixed sum with interest. *Barber* v. *Barber,* 217 N. C. 422, 428, 8 S. E. 2d 204. Nor is a judgment which enforces that duty to be treated in all respects as one upon a commercial obligation in order to be constitutionally valid.

of policy, to allow the defendant to show that the need, or the duty created by the decree, has ended; at the same time making it a condition of securing such relief that he shall take the initiative in showing the changed situation and shall do so before levy is made under instalments as they accrue. Certainly there is nothing unreasonable, harsh or arbitrary when a State, after full notice and hearing, determines that the basic familial obligation shall be enforced by judicial decree formulated to embody the obligation in close analogy, if not exact identity, with the obligation's substantive character, particularly when it affords the husband opportunity for showing a change affecting the substance of the obligation.

The fallacy of the Court's assumption, it seems to me, is that the opportunity is inadequate if it is limited to the period before the due date of the instalment arrives or such later date as the wife may select to ask for entry of the order. The Court has held a much less extended period adequate, as against constitutional objections, for purposes of making defense in criminal prosecution. *Yakus v. United States,* 321 U. S. 414. *A fortiori,* in view of the character of the obligation and the previous adjudication upon full notice and hearing, the period allowed by the New York law for making further defense should be regarded as constitutionally sufficient, even if that law is thought to cut off that right of defense when the order for judgment is entered.

No more is involved than that the husband is commanded to make payment, unless conditions have changed so as to justify nonpayment when the due date arrives; and, if such changes have taken place, he is adequately warned that he will be precluded from proving or relying upon them to avoid payment of the preexisting judgment, unless he makes the showing on or before that date. If the husband's defense is payment, he will be able subsequently to vacate or attack collaterally the judgment,

since ordinarily it would be fraudulent for the wife to docket a judgment for back alimony no longer owed to her, as the Court's opinion suggests. Even if there were a legal or factual dispute relating to payment and the wife had acted in good faith in docketing the judgment, as in a case where she had acted in ignorance of prior payment to her agent, it is inconceivable that a court, upon a showing of payment, would refuse to vacate the judgment or that equity would not come to the husband's aid. Her attempt to enforce the judgment or retain its proceeds after learning of the satisfaction would be fraudulent.

I know of nothing in the Constitution which forbids a State thus to limit the husband's right to upset the terms of the general decree or which imposes upon the wife the duty of keeping him informed of matters concerning which the law of the State binds him to inform himself. Accordingly, if it were clear, as the Court assumes, that the New York law forbids the husband to bring forward his new defenses, if any, after the entry of the judgment, I should see no valid constitutional objection to the judgment, or a levy made pursuant to it, on the score of want of notice essential to due process.[9]

## II.

But I am not convinced that New York law has the effect of cutting off all right of defense upon the docketing of an instalment for the purposes of execution. Although this Court held in *Sistare* v. *Sistare,* 218 U. S. 1, that under New York law accrued instalments of alimony could not be modified, this is no longer the case in New York. N. Y. Civ. Prac. Act § 1170; *Van Dusen* v. *Van*

---

[9] See *Jones* v. *Jones,* 204 Ark. 654, 163 S. W. 2d 528; also the authorities cited in note 13. It does not follow, however, that when alimony decrees are enforced by other means, for example through exercise of the contempt power, notice may not be required. Cf. *Miller* v. *Miller,* 79 Colo. 118, 244 P. 66.

*Dusen,* 258 App. Div. 1020, 17 N. Y. S. 2d 96; *Eisinger* v. *Eisinger,* 261 App. Div. 1031, 26 N. Y. S. 2d 22. See also *Karlin* v. *Karlin,* 280 N. Y. 32, 19 N. E. 2d 669.

It is scarcely probable that, although such modification may be made after accrual but before docketing of judgment, the New York courts would hold that it could not be made after the formal act of docketing. The Court points to no decision which so rules and none has been cited or found. Indeed the Court's opinion indicates that the husband could set aside the judgment upon showing he had paid the instalment which it included. And in *Thayer* v. *Thayer,* 145 App. Div. 268, 270–271, 129 N. Y. S. 1035, which is concededly leading authority upon this general phase of New York law, the court said with reference to the practice of docketing judgments for back alimony without further notice than that given as foundation for the original decree:

> "It is sufficient that the court is satisfied from the proof presented to it that both parties are still alive, and that the alimony remains unpaid. If the court is misled and an installment improperly docketed, the defendant will find no difficulty in having the mistake corrected."

And in *Caprio* v. *Caprio,* 169 Misc. 568, 572, 8 N. Y. S. 2d 205, it was stated:

> "The docketing of a judgment for back alimony is a recognized practice . . . and the judgment is good *if* supported by facts, but, like any other judgment, it can be set aside or modified."

These statements made by courts familiar with the New York practice plainly indicate that in circumstances sufficient to justify such action the courts of New York not only will hear the defendant's objections after the judgment is docketed but, as in other cases when the showing is sufficient, will set aside the judgment or modify it as the facts may require. This, of course, may not mean

that he will be heard to raise the identical objections which he might have presented before docketing, since it is entirely possible for the court to find that he was lacking in appropriate diligence in presenting them and should not have further opportunity to do so in view of that fact. But, whether or not this is true, the quoted statements of New York practice clearly indicate that in any case of serious hardship the defendant will not be foreclosed, merely by the docketing of the judgment, from advancing his objections by appropriate procedure and having them determined. In the face of such authoritative expressions concerning the local law and practice and in the absence of any contrary expression from a source of similar authority, this Court should not substitute its own long-distance judgment or assumption to the opposite effect, especially since on its own theory the constitutionality of the New York statute in question falls on such an assumption.[10]

### III.

If this view of the New York law is correct, the New York judgment is not wholly void for want of due process; for the petitioner is not deprived of any right of defense

---

[10] The declaration in *Sistare* v. *Sistare*, 218 U. S. 1, 22, quoted in *Barber* v. *Barber*, 323 U. S. 77, 82, that "every reasonable implication must be resorted to against the existence of" a power to modify or revoke instalments of alimony already accrued "in the absence of clear language manifesting an intention to confer it" was addressed to a different question, finality for purposes of full faith and credit, cf. Part III of this opinion, and, if applied in this case, would be in direct contradiction of the rule that legislation is presumptively constitutional.

Under the decision of the Court, § 1171–b of the New York Civil Practice Act may also be unconstitutional, as that section, enacted since the entry of the 1938 judgment, provides that the application for an order directing the entry of judgment for arrears in alimony "shall be upon such notice to the husband as the court may direct." It may be that under this wording the New York courts need not direct any notice at all.

which he may be entitled to make. It is not apparent, nor has he shown, that even now he could not make full defense upon any substantially meritorious ground in the New York courts and succeed in having the judgment set aside.

Nor, as petitioner has made his case, is the question presented whether the New York judgment is so lacking in finality that it is not entitled to receive full faith and credit in other jurisdictions.[11] But if that question is taken to lurk inescapably in the record, in the view which I have taken of the state of the New York law, it does not follow that the objection is valid.

The judgment under New York law is prima facie valid, if it is not conclusively so. It affords foundation for the issuance and levy of execution. In the absence of timely assertion of grounds requiring it to be set aside, it becomes conclusive.

This Court has not heretofore held that such a judgment is not entitled to full faith and credit. Contrary dicta reflecting the belief that it would be lacking in necessary finality are, in my opinion, neither conclusive nor sound. Certainly in the absence of any suggestion that the judgment has been questioned in the forum where rendered, adequate opportunity being there afforded, nothing but the most technical and absolute conception of "finality" could be thought to deprive it of credit. Beyond this, it is not apparent why all substantial rights of the defendant would not be fully secured, if the same effect were given to the New York judgment in the suit brought upon it elsewhere as it has in New York.

In the present case this would mean that the judgment would be enforced in the courts of the District of Co-

___

[11] To have objected that the New York judgment was not sufficiently final to be entitled to receive full faith and credit would have been in contradiction of petitioner's objection that it deprived him of due process, since his due process argument is founded in the view that his rights have been conclusively adjudicated.

lumbia, unless after service of summons in the suit for enforcement there the defendant could show to the court's satisfaction a change in circumstances or other defense sufficient under New York law to require modification or setting aside of the award. Indeed the Court does not altogether foreclose this possibility, since it reserves the question whether, upon further proceedings in the District Court, the wife may amend her claim so as to rest upon the 1924 decree, as modified in 1926; and the husband then may make his defenses allowed by New York law. If that can be done with reference to the original decree, I see no reason why the same thing should be forbidden as to the 1938 judgment. And I think the question should be determined now, not in still another chapter of this long drawn out litigation.

The full faith and credit clause does not in any case require that a judgment, to be credited, must be endowed with absolute finality. It is enough, in my opinion, if the judgment is endowed by the law of its origin with finality sufficient to sustain the issuance and levy of execution, although the same law may afford an opportunity for setting aside or modifying it upon the making of a specified showing. This is true, in my opinion, whether the suit is on the 1938 judgment or on the original decree. There is no sound ground for distinguishing them so as to permit suit, with the right defense, upon the one and not upon the other. The considerations stated by MR. JUSTICE JACKSON in his concurring opinion in *Barber* v. *Barber*, 323 U. S. 77, 86, sufficiently state the reasons supporting the views set forth in this paragraph.[12]

---

[12] It was just such rigid notions of finality which long prevented recognition of the Court of Claims as a judicial body. See *Gordon* v. *United States*, 2 Wall. 561, 117 U. S. 697; *United States* v. *Klein*, 13 Wall. 128, 144–145. Subsequently the governing statute of the Court of Claims was amended, and since that time it has never been doubted that Congress may authorize an appeal to this Court from a final

Accordingly, whether one view or the other of the New York law is taken, I think the 1938 New York judgment is entitled to full faith and credit in the District of Columbia,[13] according to the exact effect it had in New York. Since, in my opinion, the law of that State allowed the defendant on proper showing to make the defense of change in situation, whether before or after the docketing of the judgment, the same effect should be given to the judgment in the District of Columbia. As no adequate basis for modifying the judgment was tendered or proved by the defendant in the District of Columbia proceeding, I think the judgment of the Court of Appeals should be affirmed in its entirety.

MR. JUSTICE BLACK joins in this opinion.

MR. JUSTICE FRANKFURTER, dissenting.

My brother RUTLEDGE has discussed in detail difficulties involved in the Court's disposition of this case and I shall state briefly the grounds for my support of his conclusion.

---

judgment of the Court of Claims. *United States* v. *Klein, supra; Williams* v. *United States,* 289 U. S. 553, 563–564.

Even if the judgment were not sufficiently final for full faith and credit purposes, it nevertheless would be within the discretion of the District of Columbia to give it effect on grounds of comity. The full faith and credit clause commands States in certain instances to recognize the judgments of sister States; it does not prohibit them from doing so in other instances. See Jacobs, The Enforcement of Foreign Decrees for Alimony (1939) 6 Law & Contemp. Prob. 250, 263–264. See generally Note, The Finality of Judgments in the Conflict of Laws (1941) 41 Col. L. Rev. 878, 884–887.

Upon the Court's treatment of the North Carolina law in *Barber* v. *Barber,* the reservations made by MR. JUSTICE JACKSON were perhaps not required, since on that treatment the question now presented was not involved.

[13] See *Dadmun* v. *Dadmun,* 279 Mass. 217, 181 N. E. 264, where the Supreme Judicial Court of Massachusetts gave full faith and credit to a New York judgment for arrears in alimony which had been entered without notice to the defendant; Nelson, Divorce and Annulment (2d ed.) § 33.45; cf. *Barns* v. *Barns,* 9 Cal. App. 2d 427, 50 P. 2d 463; *Defoe* v. *Defoe,* 116 W. Va. 197, 179 S. E. 74.

The opportunity to defeat a claim—the right to notice before a court can determine liability—is a safeguard guaranteed by the Due Process Clause. But money judgments are not like peas in a pod. Because of differences in the source and function of liability, the demand of fairness which underlies the requirement of notice may well be satisfied by different procedures. A judgment for future alimony, as one of the incidents of jurisdiction to decree a divorce, is very unlike a judgment for the ordinary lump sum indebtedness. It is in effect an ambulatory judgment for each instalment as it becomes due. The obligation to pay arrears flows from the original judgment and may be pursued upon that judgment elsewhere than in the rendering State. *Barber* v. *Barber*, 21 How. 582; *Sistare* v. *Sistare*, 218 U. S. 1. For purposes of suability as a judgment elsewhere, the accrued instalments need not be reduced to judgment anew in the State of the original decree, whatever may be the requirements for the execution of that judgment in the rendering State.

But it is said that the State rendering the original judgment for alimony may allow, as New York has done here, mitigation of such judgment even as to accrued instalments. If so, such mitigating defenses may be set up when the decree for alimony is sued on in a sister State as well as when enforced in the rendering State. A judgment may have been paid and yet a suit thereon may be brought in another State. While such a defense, if well founded, precludes a second recovery on that judgment anywhere, the availability of such a defense does not bar suit on such a judgment in a sister State. It runs counter to no requirement of Due Process to make a judgment debtor defend a suit on that judgment by claiming discharge of its liability, whether through payment or otherwise. Such a procedure is entirely consonant with the full faith and credit which "shall be given in each State to the . . . judicial Proceedings of every other State." Article IV, § 1

of the Constitution; see the concurring opinion in *Barber* v. *Barber,* 323 U. S. 77, 86, at 87. Moreover, the District of Columbia, as is true of a State, see *Thompson* v. *Thompson,* 226 U. S. 551, may as a matter of conflict of laws go beyond what is required by the Full Faith and Credit Clause. If, perchance, relief from accrued instalments is based on considerations of policy peculiarly within the local understanding and discretionary determination of judges of the originating jurisdiction, sister State tribunals have ample power of abstention to respect such local qualifications. In any event, access to this Court is always open on such a federal issue.

I agree therefore with my brother RUTLEDGE that the judgment below should be affirmed in its entirety. While formally the suit was on the New York judgment of 1938, this in turn was based on the original judgment for alimony. That judgment is in the record and is the real source of these proceedings. If a misdescription of a criminal prosecution is deemed a formal irrelevance so long as an offense is intrinsically charged, *Williams* v. *United States,* 168 U. S. 382, a misdescription by the pleader of the basis of a suit for accrued instalments on a judgment for alimony can hardly be too tight a knot for courts to untie.

Pleadings, particularly in a case of this sort, are no longer to be dealt with in the spirit of Baron Parke. See L. Hand, *The Deficiencies of Trials to Reach the Heart of the Matter* (1921), in 3 Lectures on Legal Topics, Association of the Bar of the City of New York (1926) 89. A suitor is entitled to have relief justified by the facts he has pleaded, whether he has accurately described his pleading or has asked for relief appropriate to the pleaded facts. See *United States* v. *Memphis Cotton Oil Co.,* 288 U. S. 62, 68–69; *Bemis Bro. Bag Co.* v. *United States,* 289 U. S. 28, 34. The purpose of a complaint is to give the defendant fair notice of the claim against him. If it does

that, the complaint is legally sufficient. Griffin could have had no doubt that his wife was suing in the District of Columbia for unpaid instalments of alimony which New York, as part of the divorce proceedings, had decreed in her favor. Upon the record before us the petitioner disclaimed liability for these arrears on grounds which do not save him. We ought not to deny liability flowing from a live judgment by assuming that the petitioner has better grounds for avoiding liability than those that he has already asserted. If, perchance, he could satisfy the district court that he has failed to set up a valid defense through a reasonable misconception of what was the essence of his wife's suit, namely a suit for arrears of alimony which were her due, it would not be casting an unreasonable burden on the petitioner to require him to move to set aside the judgment on appropriate grounds.