John L. AUGUSTINE,
Plaintiff-Appellant,

v.

A. Melvin McDONALD, et al.,
Defendants-Appellees.

No. 84–2409.

United States Court of Appeals,
Ninth Circuit.

Submitted June 11, 1985 *.

Decided Sept. 10, 1985.

---

* This panel unanimously agrees that this case is appropriate for submission without oral argument. Fed.R.App.P. 34(a) and Ninth Circuit Rule 3(f).

John L. Augustine, Phoenix, Ariz., for plaintiff-appellant.

A. Melvin McDonald, U.S. Atty., Susan A. Ehrlich, Richard G. Patrick, Asst. U.S. Attys., Phoenix, Ariz., for defendants-appellees.

Before SNEED and BEEZER, Circuit Judges, and TASHIMA, District Judge[**].

TASHIMA, District Judge:

Plaintiff John L. Augustine appeals from the district court's entry of summary judgment in favor of defendants A. Melvin McDonald and James E. Mueller dismissing the action. We affirm.

## I. FACTS

This is a *Bivens*-type [1] action against McDonald, the United States Attorney for the District of Arizona, and Mueller, an Assistant United States Attorney, for asserted violations of plaintiff's constitutional rights and for common law tort. The dispute arises out of the garnishment of plaintiff's account funds and wages to satisfy a judgment against him obtained by the United States. The complaint alleges that the actions of Mueller, in filing the writs of garnishment, violated appellant's right to due process protected by the Fifth and Fourteenth Amendments and constituted an abuse of process. McDonald is sued on the basis of his "approval" of Mueller's actions.

The following facts are not in dispute. In 1969, Augustine and two other individuals executed a written guaranty of a note of Acme Van & Storage Co. Subsequently, when Acme defaulted on the note, the payee bank assigned it to the Small Business Administration ("SBA"). The SBA filed an action against the note's guarantors, including plaintiff, to recover on the guaranty. A judgment was entered against the guarantor-defendants in that action in 1979.

Mueller was assigned to collect on the judgment. He made several attempts to file writs of garnishment in 1982 and 1983 on plaintiff's account at Arizona State Employees' Credit Union ("Credit Union") and on his wages from the State of Arizona. Augustine moved to quash the first writ of garnishment filed on his Credit Union account on the grounds that it was served on the wrong branch of the Credit Union and that it constituted an abuse of process. Mueller then filed a second writ of garnishment on the correct branch. Augustine moved to quash this writ on the ground that it did not include certain instructions for the garnishee required under Arizona law and that the filing constituted an abuse of process. Mueller then filed a third writ on the correct branch and with the required instructions. Augustine moved to quash

---

[**] The Honorable A. Wallace Tashima, United States District Judge, Central District of California, sitting by designation.

1. *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

this writ on the grounds that it constituted an abuse of process.

The district court held a hearing on the motions to quash all three writs. At that time, the garnishee Credit Union argued that part of the funds held in Augustine's account was pledged as security for other obligations. The court denied all three motions to quash, finding the motions to quash the first two writs moot, and finding that there was no abuse of process in the filing of the third writ. *United States v. Augustine*, No. CV 73–041–TUC–MAR (D.Ariz. Nov. 8, 1982) (Order, p.5). The district judge thereupon entered judgment against the garnishee Credit Union in the amount of the then current balance not pledged as security. Augustine purported to appeal from that order. This Court, first concluding that no final judgment was involved, treated the purported "appeal" as a petition for a writ of mandamus and denied the petition. *United States v. Gwyn*, 730 F.2d 771 (9th Cir.1984) (memo.) (the "mandamus proceeding").

Mueller also filed eight writs of garnishment directed to Augustine's employer, the State of Arizona. The first writ was quashed on the government's own motion. Augustine moved to quash the second through eighth writs on the ground that Mueller failed to apply for the writs under oath as required by A.R.S. § 12–1573. He also argued that the Arizona garnishment statute, A.R.S. § 12–1571 *et seq.*, was unconstitutional in that it violated his due process rights by failing to provide pre-garnishment notice and hearing.

The district court granted the motions to quash all of the writs for failure to have been applied for under oath, except for the fifth writ, which was applied for under oath. Further, the court held that the Arizona post-judgment garnishment statute,

which did not provide for pre-garnishment notice or hearing, did not violate Augustine's due process rights. The court found that appellant had received sufficient notice—first, in a letter from the United States indicating its intent to garnish every paycheck, and second, by the withholding of the wages themselves. *United States v. Augustine*, No. CV 73–041–TUC–MAR (D.Ariz. Apr. 4, 1983) (Order).

Defendants moved for summary judgment on the ground that they were protected from liability by the doctrine of qualified immunity with respect to the constitutional tort and absolute immunity with respect to the common law tort. As indicated, the motion was granted and the action dismissed.

## II. DISCUSSION

### A. *Standard of Review*

This Court reviews the grant of summary judgment *de novo, Haluapo v. Akashi Kaiun, K.K.*, 748 F.2d 1363, 1364 (9th Cir. 1984), applying the same test as did the district court. *RFD Publications, Inc. v. Oregonian Publishing Co.*, 749 F.2d 1327, 1328 (9th Cir.1984); *Turner v. Prod*, 707 F.2d 1109, 1114 (9th Cir.1983), *rev'd on other grounds*, —— U.S. ——, 105 S.Ct. 1138, 84 L.Ed.2d 138 (1985). That test is "whether there is a genuine issue of material fact, and, if not, whether the moving party is entitled to judgment as a matter of law." *Simon v. United States*, 756 F.2d 696, 697 (9th Cir.1985) (citation omitted). Here, the parties agree that no material facts are in dispute.

### B. *Qualified Immunity* [2]

■ Government officials performing discretionary functions may be protected

---

**2.** Not every violation of a state statute amounts to a constitutional tort and it is at best debatable that a constitutional tort was committed here. *See Clemente v. United States*, 766 F.2d 1358, 1364 n. 8 (9th Cir.1985) ("It goes without saying that it would be neither sound law nor desirable policy to constitutionalize every state ... regulation." [Citation omitted] ). In fact, in the disposition of the mandamus proceeding, this

Court held that the filing of the successive writs did not infringe Augustine's due process rights. *United States v. Gwyn*, 730 F.2d 771, slip op. at 2 (9th Cir.1984) (memo.). We assume, however, for purposes of our review of the summary judgment, that both a constitutional and common law tort were adequately alleged.

by a qualified or good faith immunity, under which they "are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982) (citations omitted). *See also Davis v. Scherer,* —— U.S. ——, 104 S.Ct. 3012, 3018, 82 L.Ed.2d 139 (1984) (applying *Harlow* qualified immunity standard to state officials in action under 42 U.S.C. § 1983).

■ Augustine contends that defendants' violation of the Arizona garnishment statute violated his due process rights. The specific alleged violations of the Arizona statute are: (1) the serving of the first writ against plaintiff's account on the wrong branch of the Credit Union; (2) the failure to include the required instructions with the second writ against plaintiff's Credit Union account; and (3) the failure to apply for the writs of garnishment against plaintiff's wages under oath. These specific failures to follow the letter of the Arizona statute do not constitute clearly established constitutional violations. As the Court held in *Davis,* officials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some state statutory or administrative provision. 104 S.Ct. at 3020.

■ Here, immediately upon plaintiff's objection to procedural defects in the various writ applications, the defect was corrected by defendant Mueller by the issuance of a new writ. Ultimately, any writ of garnishment which resulted in depriving plaintiff of any property complied fully with statutory requirements and the district court so held. Since the district court also held the first two Credit Union garnishment writs moot and quashed all of the wage garnishment writs, except the fifth, which complied with the statute, we cannot conclude that plaintiff was deprived of a "clearly established" due process right by the mere issuance of the nine writs of garnishment. Although these writs did not comply with the Arizona statute, they were never enforced.

■ The only other basis for defeating defendants' qualified immunity would be a determination that the Arizona statute under which they acted was "clearly" unconstitutional in not providing pre-garnishment notice and an opportunity to be heard. Such, however, was not the case. It was not clearly established at the time of defendants' actions that the Arizona post-judgment garnishment statute, which does not afford pre-garnishment notice and hearing, violated due process. To the contrary, the Arizona statute has been upheld by the Arizona courts against a due process constitutional challenge. *See, e.g., Huggins v. Deinhard,* 134 Ariz. 98, 654 P.2d 32, 37–38 (Ct.App.1982). Further, there is other support for the constitutionality of such statutes. *See, e.g., Brown v. Liberty Loan Corp.,* 539 F.2d 1355, 1368 (5th Cir.), *cert. denied,* 430 U.S. 949, 97 S.Ct. 1588, 51 L.Ed.2d 797 (1976).[3] Under

Defendants also contend that the doctrine of collateral estoppel bars Augustine's relitigation of these claims, relying on *Gwyn.* While it is true that we held in *Gwyn* that the writs of garnishment there involved neither infringed Augustine's due process rights nor constituted an abuse of process, there was then no final judgment. *Id.* For that reason, *see Russell v. Commissioner,* 678 F.2d 782, 786 & n. 4 (9th Cir.1982) (discussion of "finality" for res judicata purposes); Restatement (Second) of Judgments § 13 comment *b* (comparing finality under 28 U.S.C. § 1291 with finality for res judicata purposes), and because the claims and issues here are broader than the "three writs of garnishment ... against two of his financial accounts" involved in *Gwyn,* 730 F.2d 771, slip op.

at 1–2, we avoid decision of the collateral estoppel issue as unnecessary in light of our disposition of the immunity issue.

**3.** The Arizona Court of Appeals in *Huggins* relied on *Endicott-Johnson Corp. v. Encyclopedia Press, Inc.,* 266 U.S. 285, 288, 45 S.Ct. 61, 62, 69 L.Ed. 288 (1924), in which the Court upheld a New York post-judgment garnishment statute against constitutional attack. There is (and was in 1982) some question, however, as to the continued vitality of *Endicott-Johnson* in light of the Court's subsequent ruling in *Griffin v. Griffin,* 327 U.S. 220, 66 S.Ct. 556, 90 L.Ed. 635 (1946). Although *Griffin* did not involve a garnishment statute and did not cite *Endicott-Johnson,* it held that where a second judgment was based on a

this decisional law, it was not clearly established that the Arizona statute was unconstitutional. *See Capoeman v. Reed,* 754 F.2d 1512, 1514 (9th Cir.1985) (discussion of "clearly established" standard).

In summary, this is precisely the kind of case in which, under the *Harlow* rule, summary judgment at an early stage is appropriate. *See Harlow,* 457 U.S. at 817–18, 102 S.Ct. at 2737–38; *Ryan v. Bilby,* 764 F.2d 1325, 1328 (9th Cir.1985). The summary judgment record and an analysis of the then-existing state of the law indicate that no clearly established constitutional right of plaintiff was violated, either by defendants' failure to comply with the letter of the Arizona garnishment statute or by their reliance on and use of the statute. The district court, therefore, properly determined that defendants were shielded from liability by the qualified immunity defense.

### C. *Absolute Immunity*

 Plaintiff claimed also that defendants' actions constituted abuse of process under Arizona law, alleging that Mueller, by filing the writs, and McDonald, by approving Mueller's conduct, acted "outside the proper performance of ... [their] duties." Federal officials enjoy an absolute immunity from liability for common law torts, which shields the official from liability for actions taken within the outer perimeter of the official's line of duty. *Barr v. Matteo,* 360 U.S. 564, 79 S.Ct. 1335,

3 L.Ed.2d 1434 (1959); *Owyhee Grazing Ass'n, Inc. v. Field,* 637 F.2d 694, 697 (9th Cir.1981). For the official's actions to fall within that outer perimeter, "it is only necessary that the action bear some reasonable relation to and connection with the duties and responsibilities of the official." *Clifton v. Cox,* 549 F.2d 722, 726 (9th Cir. 1977) (citations omitted).

The United States Attorney and his assistants are vested with the authority to collect on judgments obtained by the United States. 28 U.S.C. § 547(2); 28 C.F.R. § 0.171(b). All actions taken by defendants in filing for writs of garnishment were taken in the exercise of those duties.[4] Although defendants may have failed to comply with all provisions of the Arizona garnishment statute, there is no showing that they acted outside the outer perimeter of their duties in enforcing the judgment against plaintiff.

### III. CONCLUSION

The district court correctly held that defendants were immune from liability as a matter of law for both the alleged constitutional tort and state law violations. Accordingly, the judgment is affirmed.

---

prior judgment entered without proper notice, the entry of the first judgment could not support the entry of the second judgment without adequate due process safeguards such as prior notice and an opportunity to be heard. *Id.* at 232–33, 66 S.Ct. at 562. This holding, therefore, undercuts the assumption in *Endicott-Johnson* that the entry of the initial judgment satisfies the due process requirements for the writ of garnishment, without further pre-garnishment notice and hearing. However, as noted in *Brown,* 539 F.2d at 1364–65, the holding in *Griffin* only partly undercuts *Endicott-Johnson.* The *Griffin* court also noted, for example, that to the extent that the subsequent judgment obtained without notice was based on the part of the prior judgment for which prior notice had been given, the subsequent entry of judgment

was valid. 327 U.S. at 233–34, 66 S.Ct. at 562–63.

Thus, despite some inroads into the continued validity of *Endicott-Johnson,* where, as here, there has been no question raised as to the validity of the underlying judgment, it cannot successfully be argued that at the time of the execution of the writs it was clearly established that the Arizona statute violated a debtor's due . process guarantees.

4. On the abuse of process issue, we held in the mandamus proceeding that, "The government had a legal right to collect on its outstanding judgment against Augustine. Augustine failed to show that the government had a purpose other than collecting its judgment. *See Nienstedt v. Wetzel,* 133 Ariz. 348, 651 P.2d 876, 881 (Ct.App.1982)." *Gwyn,* 730 F.2d 771, slip op. at 2.