**Affirmed and Majority Opinion and Concurring Opinions filed October 23, 2014.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-13-00622-CV

---

## IN THE INTEREST OF E.H., A.H., AND E.H., CHILDREN

---

**On Appeal from the 306th District Court**
**Galveston County, Texas**
**Trial Court Cause No. 11-FD-1631**

---

## M A J O R I T Y   O P I N I O N

The Office of the Attorney General appeals the trial court's refusal to register an Israeli child support order awarded to Sara Hamo after Shlomo Hamo, Sara's former husband and the father of their three children, contested the registration, arguing that the Israeli court lacked personal jurisdiction over him because he was never served and that he was denied due process. The Attorney General contends that the record establishes that Shlomo was served with notice of the Israeli proceeding but failed to appear in that tribunal, and therefore full faith and credit principles incorporated into the Uniform Interstate Foreign Support Act

(UIFSA) and the equitable doctrine of comity require registration of the judgment. The Attorney General also argues that Shlomo's bare assertion that he was not served is an insufficient basis on which to deny registration. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Sara and Shlomo Hamo married in Israel in 1984. The couple had three children between July 1985 and July 1991, all of whom were born in Israel. From 1986 through 1988, however, Sarah and Shlomo lived in Tucson, Arizona, after which they returned to Israel. In February 1992, Shlomo left Sara and the children in Israel and moved to the United States. Shlomo originally lived and worked in Myrtle Beach, South Carolina, but in September 1992, Shlomo moved to Galveston, Texas.

In June 1993, Sara obtained a judgment for child support against Shlomo in Israel, after allegedly serving Shlomo with the suit by registered mail as provided under Israeli law. Several years later, Shlomo was granted a rabbinical divorce in Galveston through proceedings initiated by Sara. One of Shlomo's sons, Amos, eventually came to live with Shlomo in Galveston, and in 2002, Shlomo was awarded conservatorship of Amos in the 306th District Court of Galveston County.

Sara did not receive any child support payments from Shlomo. The National Insurance Institute of Israel paid a portion of the monthly support ordered through a program in which a spouse may obtain a portion of unpaid child support awards from the Israeli government. Under Israeli law, the spouse is permitted to file suit against the non-paying spouse for the difference. Sara was granted permission by an Israeli court to seek arrearages from Shlomo equivalent to $144,763.82 as of August 30, 2010.

In June 2011, the Office of the Attorney General filed a "Notice of

Registration of Foreign Support Order (UIFSA)" and a "Motion to Confirm Support Arrearage (UFISA)" in the 306th District Court of Galveston County to register the 1993 Israeli court's order and confirm the child support arrearages. Shlomo contested the registration arguing, among other things, that he was never served with process for any child support action by Sara in Israel and that enforcement of the order would violate his right to due process. The Attorney General later filed an amended notice of registration of the foreign support order, as well as an amended motion to confirm the support arrearage as of September 29, 2012, now seeking the equivalent of $168,129.00. In December 2012, an associate judge initially heard the case and denied registration of the judgment.

The Attorney General sought a de novo hearing before the district court. At the hearing, Shlomo testified that the first time he had heard of the judgment against him for child support was in 2011, when he received the notice of registration from the Attorney General's office. Shlomo denied ever being served with documents from the Israeli court or signing a delivery confirmation card accepting service. Shlomo also contended that the Israeli judgment should not be registered because the record did not show compliance with Israeli rules of civil procedure.

On April 17, 2013, the district court signed an order denying registration of the foreign judgment, finding that Shlomo was denied due process in the underlying suit in Israel, he was never served with process in the underlying suit, and he had no notice of the suit. The district court also made extensive findings of fact and conclusions of law.

## ISSUES AND ANALYSIS

In its first issue, the Attorney General argues that under the full faith and credit principles Texas adopted for foreign judgments in the UIFSA, the trial court

3

was required to register the foreign child-support order against Shlomo because the record establishes that Shlomo was served with notice of the Israeli proceeding but failed to raise any challenge in that tribunal. In its second issue, the Attorney General argues that the trial court should have deferred to the Israeli tribunal's personal-jurisdiction determination under the equitable doctrine of comity. In its third issue, the Attorney General argues that the trial court should have registered the Israeli support order when Shlomo offered little more than his bald assertion that he was not served with process.

## *THE UIFSA*

The UIFSA is codified in chapter 159 of the Texas Family Code. *See* Tex. Fam. Code §§ 159.001–.901. Under the UIFSA, a party may register a child support or income-withholding order issued by a tribunal of another state for enforcement in Texas. *Id.* § 159.601. A "state" includes "a foreign country or political subdivision that has been declared to be a foreign reciprocating country or political subdivision under federal law." *Id.* § 159.102(21)(B)(i). It is undisputed that Israel qualifies as a state for purposes of enforcement of support orders under the UIFSA. *See* Memorandum of Understanding for Cooperation in Child Support Enforcement, U.S.–Isr. (Feb. 5, 2009), available at http://www.acf.hhs.gov/programs/css/resource/israel-frc.

Once registered, a support order is enforceable in the same manner and is subject to the same procedures as an order issued by a Texas court. Tex. Fam. Code § 159.603. A party contesting the registration is required to request a hearing and has the burden of proving one or more of eight enumerated defenses. *Id.* §§ 159.606, 159.607. The defenses that may be asserted include the defense that "the issuing tribunal lacked personal jurisdiction over the contesting party." *Id.* § 159.607(a)(1). If the contesting party does not establish a defense to the validity or

4

enforcement of the order, the registering court must confirm the order. *Id.* § 159.607(c).

***Analysis of the Attorney General's Issues***

## I.     Full Faith and Credit and Comity

In its first issue, the Attorney General argues that under the UIFSA, child support orders of reciprocating countries are entitled to full faith and credit. Therefore, according to the Attorney General, the trial court should have registered the Israeli child support order because the record established that Shlomo was served with notice of the Israeli proceeding but failed to make any challenge in that tribunal. In its second issue, the Attorney General argues that, even if principles of full faith and credit do not apply, the trial court still should have registered the Israeli order under the comity doctrine.

### A.     Full faith and credit

The United States Constitution requires each state to give full faith and credit to every other state's public acts, records, and judicial proceedings. U.S. Const. art. IV, § 1; *Bard v. Charles R. Myers Ins. Agency, Inc.*, 839 S.W.2d 791, 794 (Tex. 1992). Generally, however, states are not required to give full faith and credit to foreign country judgments. *See Duruji v. Duruji*, Nos. 14-05-01185-CV, 14-05-01186-CV, 2007 WL 582282, at *4 (Tex. App.—Houston [14th Dist.] Feb. 27, 2007, no pet.) (mem. op.); *see also Schacht v. Schacht*, 435 S.W.2d 197, 202 (Tex. Civ. App.—Dallas 1968, no writ) (stating that full faith and credit did not apply to require that Texas court recognize Mexican divorce decree). Once grounds for nonrecognition have been timely asserted, the foreign country judgment will not be recognized or enforced until those objections have been expressly overruled by the trial court. *Duruji*, 2007 WL 582282, at *4.

5

The UIFSA does not expressly require that full faith and credit be extended to qualifying foreign country judgments. *Compare* Tex. Fam. Code § 159.603(b) ("A registered order issued in another state is enforceable in the same manner and is subject to the same procedures as an order issued by a tribunal of this state."), *with* Tex. Civ. Prac. & Rem. Code § 36.004 (the "Uniform Foreign Country Money-Judgment Recognition Act") (providing that a foreign country judgment which satisfies the statutory requirements "is enforceable in the same manner as a judgment of a sister state that is entitled to full faith and credit"); Tex. Fam. Code § 162.023 ("Except as otherwise provided by law, an adoption order rendered to a resident of this state that is made by a foreign country shall be accorded full faith and credit by the courts of this state and enforced as if the order were rendered by a court in this state unless the adoption law or process of the foreign country violates the fundamental principles of human rights or the laws or public policy of this state."). The Attorney General concedes that it is unaware of any cases which have extended full faith and credit to international support orders under UIFSA. Nevertheless, the Attorney General argues that the Legislature intended to incorporate "full faith and credit principles" into the UIFSA because the Act defines "state" to include qualifying foreign countries. *See* Tex. Fam. Code § 159.102(21)(B)(i). According to the Attorney General, application of full faith and credit principles should have defeated Shlomo's challenge to the jurisdictional recitations in the Israeli record.

Specifically, the Attorney General contends that a state must give another state's judgment full faith and credit—even as to questions of jurisdiction—when the parties have "fully and fairly litigated and finally decided" the issue in the other state. *See, e.g.*, *Durfee v. Duke*, 375 U.S. 106, 111 (1963). An issue is considered fully and fairly litigated when the party contesting jurisdiction has voluntarily

6

appeared, presented his or her case, and been fully heard. *Id.* (citing *Baldwin v. Iowa State Traveling Men's Ass'n*, 283 U.S. 522, 525–26 (1931)). The Attorney General argues that the record conclusively shows that Shlomo was served with Sara's claim for support consistent with Israeli rules of civil procedure, but he failed to contest jurisdiction and therefore cannot collaterally attack the Israeli tribunal's jurisdiction. *See Soc'y of Lloyd's v. Turner*, 303 F.3d 325, 331 n.20 (5th Cir. 2002). The Attorney General asserts that, if Shlomo was unhappy with the Israeli court's decision, the appropriate forum to challenge it was in that tribunal. *See Playnation Play Sys., Inc. v. Guajardo*, No. 13-06-302-CV, 2007 WL 1439740, at *3 (Tex. App.—Corpus Christi May 17, 2007, no pet.) (mem. op.) ("If a defendant is unsatisfied with the foreign court's ruling as to jurisdiction, the proper redress is to appeal within the foreign court's judicial system.") (citing *Baldwin*, 283 U.S. at 525).

In response, Shlomo points out that the UIFSA expressly provides that a foreign order is not valid and its registration will be vacated if the contesting party proves that the foreign tribunal lacked personal jurisdiction over the contesting party. *See* Tex. Fam. Code § 159.607(a)(1). Shlomo further argues that the order of another state is entitled to full faith and credit only when the court had jurisdiction to render its judgment and, even if the record of the rendering state's court purports to show jurisdiction, that court's jurisdiction may be collaterally impeached. *See Williams v. North Carolina*, 325 U.S. 226, 229–30 (1945); *see also Cook v. Cook*, 342 U.S. 126, 128 (1951) ("If it appears on its face to be a record of a court of general jurisdiction, such jurisdiction over the cause and the parties is to be presumed unless disproved by extrinsic evidence, or by the record itself.") (citing *Adam v. Saenger*, 303 U.S. 59, 62 (1938)). Likewise, our courts have held that when asked to give full faith and credit to a foreign judgment, a Texas court may

consider evidence that goes to the sister state court's personal or subject matter jurisdiction over the parties. *See, e.g.*, *Gunther v. Gunther*, 478 S.W.2d 821, 827 (Tex. Civ. App.—Houston [14th Dist.] 1972, writ ref'd n.r.e.); *Spitzmiller v. Spitzmiller*, 429 S.W.2d 557, 560 (Tex. Civ. App.—Houston [1st Dist.] 1968, writ ref'd n.r.e.).

We disagree with the Attorney General that the Israeli record conclusively shows that Shlomo was served with Sara's support claim in the Israeli court in 1992 and therefore Shlomo is precluded from challenging the Israeli court's jurisdiction. As explained in greater detail below, the Israeli record shows that Sara and her advocate presented some evidence of service at a hearing on her support claim, but Shlomo denied that he was served and presented evidence that the record of the Israeli proceeding does not contain the proof of service through mail that Israeli law requires. And, unlike the *Playnation* case cited by the Attorney General, Shlomo made no appearance and filed no jurisdictional or other challenges in the Israeli court. *See Playnation*, 2007 WL 1439740, at \*4 (holding appellant had opportunity to fully and fairly litigate his claim when Georgia court's judgment included jurisdictional facts reflecting that the appellant filed a limited appearance and motion to dismiss for lack of jurisdiction and venue that was denied).

Accordingly, even if full faith and credit applies to a qualifying foreign country judgment under the UIFSA—an issue we need not decide—the trial court did not err by considering Shlomo's evidence supporting his challenge to the registration of the Israeli judgment. *See* Tex. Fam. Code § 159.607. We overrule the Attorney General's first issue.

8

## B. Comity

In its second issue, the Attorney General argues that, even if full faith and credit principles do not apply, the trial court still should have registered the Israeli order under the comity doctrine. *See* Tex. Fam. Code § 159.104(a) ("Remedies provided in this chapter are cumulative and do not affect the availability of remedies under other law, including the recognition of a support order of a foreign country or political subdivision on the basis of comity.").

Comity is "the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under the protections of its laws." *Gannon v. Payne*, 706 S.W.2d 304, 306 (Tex. 1986) (quoting *Hilton v. Guyot*, 159 U.S. 113, 163–64 (1895)). In Texas, comity has been described as "'a principle of mutual convenience whereby one state or jurisdiction will give effect to the laws and judicial decisions of another.'" *Id.* (citing *New Process Steel Corp. v. Steel Corp. of Tex.*, 638 S.W.2d 522, 524 (Tex. App.—Houston [1st Dist.] 1982, no writ)).

The Attorney General argues that the trial court should have respected the Israeli court's determination of its jurisdiction, again asserting that the record conclusively belies Shlomo's claim that he did not receive notice of the proceedings below. Additionally, the Attorney General contends that even if any of the individual requirements for service under Israeli law were not met to the letter, Shlomo received notice "of such nature as reasonably to convey the required information" that "afford[ed] a reasonable time for those interested to make their appearances," which is enough to satisfy due process requirements in a collateral attack. *See Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) ("An elementary and fundamental requirement of due process in any proceeding

9

which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."). Thus, the Attorney General maintains that the notice Shlomo received is consistent with American notions of due process, citing *Turner Entm't Co. v. Degeto Film GmbH*, 25 F.3d 1512, 1520 (11th Cir. 1994) (considering whether foreign legal system "follows procedures that ensure that litigants will receive treatment that satisfies American notions of due process").

In response, Shlomo disagrees that the doctrine of comity applies here, but even if it does, he argues that under either the UIFSA or comity, the Attorney General was required to show that Shlomo was properly served and had been afforded his right to due process—something Shlomo denies occurred. Further, Shlomo argues that in *New Process Steel Corp.*, the court explained that a party "is not entitled to the application of comity as a matter of right" and held that the trial court's failure to apply the doctrine to enjoin proceedings pending in another jurisdiction was "neither error nor an abuse of discretion." 638 S.W.2d at 524.

Again, for the reasons explained below, we disagree with the Attorney General that the record conclusively shows that Shlomo was served as required under Israeli court rules or that he received notice sufficient to comport with the requirements of due process. "[D]ue process requires that no other jurisdiction shall give effect, *even as a matter of comity*, to a judgment elsewhere acquired without due process." *Griffin v. Griffin*, 327 U.S. 220, 228 (1946) (emphasis added); *see Mullane*, 339 U.S. at 314; *see also Litvaitis v. Litvaitis*, 295 A.2d 519, 522 (Conn. 1972) ("A decree of divorce will not be recognized by comity where it was obtained by a procedure which denies due process of law in the real sense of the term . . . or where the foreign court lacked jurisdiction."). On the facts of this

10

case, the trial court was not required to recognize Sara's support order on the basis of comity. We overrule the Attorney General's second issue.

## II.    The Evidence Supporting the Trial Court's Judgment

In its third issue, the Attorney General contends that, even if Shlomo were permitted to re-litigate de novo the Israeli court's personal jurisdiction over him, his challenge still should fail "under any standard of review." According to the Attorney General, Shlomo's "bald assertion that he was not served," without more, is outweighed by the Attorney General's evidence and the presumption of regularity in the judgment. The Attorney General further argues that, even assuming the evidence were in equipoise, Texas's long-standing policy of protecting the best interests of its children, particularly with regard to the enforcement of child support obligations, should "serve as a thumb on the scale favoring enforcement." *See Williams v. Patton*, 821 S.W.2d 141, 145 (Tex. 1991) (stating that "[i]t is a strong, long-standing policy of this state to protect the interests of its children, and this is the policy underlying the enforcement of child support obligations"); *see also id.* at 150 ("The change in focus to the best interest of the child came about only as society came to realize that the welfare of the child should be the paramount consideration in the formulation and enforcement of child support obligations.") (Cornyn, J., concurring).

As an initial matter, although we recognize the important policy of the best interest of the child, we disagree that this policy should be a "thumb on the scale" to authorize enforcement of a child support order against a party over whom the issuing court lacked personal jurisdiction or in violation of that party's due process rights. Notably, Texas's version of the UIFSA specifically allows a child support obligor to challenge the registration or enforcement of another state's child-support or income-withholding order. *See* Tex. Fam. Code § 159.607(a)(1). Nothing in the

11

statutory scheme suggests that a court may disregard evidence establishing a defense permitted under this section in favor of a best-interests analysis.

We turn next to the Attorney General's evidentiary complaint that Shlomo's evidence presented in support of his registration contest is insufficient to support the judgment because it consists of no more than Shlomo's bald assertion that he was not served. The Attorney General does not brief the issue as a challenge to the legal or factual sufficiency of the evidence and does not provide an applicable standard of review.

Generally, an appellate court reviews a trial court's order for an abuse of discretion. *See, e.g.*, *In re T.B.*, No. 07-10-00377-CV, 2012 WL 751950, at *1 (Tex. App.—Amarillo Mar. 8, 2012, pet. denied) (mem. op.); *Office of the Att'y Gen. v. Buhrle*, 210 S.W.3d 714, 717 (Tex. App.—Corpus Christi 2006, pet. denied). A trial court abuses its discretion if it reaches a decision so arbitrary and unreasonable it amounts to a clear and prejudicial error of law or it clearly fails to correctly analyze or apply the law. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992).

Under a proper abuse-of-discretion review, we defer to the trial court's factual findings if supported by the evidence, but we do not defer to the trial court on questions of law. *Perry Homes v. Cull*, 258 S.W.3d 580, 598 & n.102 (Tex. 2008). The enforcement of a foreign country judgment is a question of law we review de novo. *See Sanchez v. Palau*, 317 S.W.3d 780, 785 (Tex. App.—Houston [1st Dist.] 2010, pet. denied); *Courage Co., L.L.C. v. Chemshare Corp.*, 93 S.W.3d 323, 331 (Tex. App.—Houston [14th Dist.] 2002, no pet.). We therefore review the record to determine whether the trial court misapplied the law to the established facts in deciding that Shlomo established his defense to registration of the Israeli judgment under the UIFSA. *See In re T.B.*, 2012 WL 751950, at *1.

12

Although the Attorney General contends that its evidence is sufficient "under any standard of review," the Attorney General's briefing does not address whether an elevated standard of proof applies. At oral argument, however, the Attorney General asserted for the first time that the standard of proof is "clear and convincing" evidence. Shlomo disagreed, arguing that the proper standard is preponderance of the evidence and pointing out that the issue had not been briefed. We need not decide whether an elevated standard of review applies, however, because under any standard, the evidence is more than sufficient to support the trial court's judgment.

## A.     The Attorney General's evidence

In a single paragraph, the Attorney General contends that Shlomo's evidence is overcome by the presumption of regularity in judgments and the following evidence: (1) an Israeli order authorizing service by mail on Shlomo; (2) a transcription of the court proceedings and verdict; and (3) a certificate of service. Relevant here, Rule 495 of the Israeli rules of civil procedure authorizes service by mail as follows:

> (a)  Service of court documents by mail shall be by the registered mail with proof of delivery.
>
> (b)  The court clerk shall send the documents stamped with the court seal and shall record in the Action File, or in the certificate that shall be attached to the File, description of the documents, method of service and service date.
>
> (c)  Proof of delivery shall be attached to the Action File.

Rule 495, Civil Law Procedure: Civil Law Procedure Regulations 5744-1984, p. 157 (Aryeh Greenfield – A.G. Publications ed. & trans., 11th ed. 2012).[1] As

---

[1]The Attorney General provided the source for the rule and both parties agree that Rule 495 applies in this case.

explained by an Israeli attorney who testified concerning Israeli law on Shlomo's behalf, once service by mail is accomplished as provided in the rule, the court has personal jurisdiction over the defendant.

1. <u>The Israeli order authorizing service</u>. The evidence reflects an Israeli tribunal's order of October 1992, authorizing service by mail to Shlomo Hamo at the address of "510 HWY 17 N #AA, Surfside Beach, S.C. 29577 (USA)." The summons for Sara's support claim was dated November 16, 1992, and purports to enclose the "Statement of Claim" and other required documents.

2. <u>The Israeli court proceedings and verdict</u>. At the hearing in June 1993, Sara and her advocate appeared before the Tel Aviv District Court, where the following exchange took place:

> Adv. Zafar: Service of the summons was duly made by law following a decision to serve the summons outside of Israel. I submit the confirmation. I request a court ruling according to the statement of claim.
>
> The wife [Sara]: In February my husband told me by telephone that he has received the claim documents. I identify my husband's signature on the confirmation of delivery.

After the claim was submitted, the court announced its verdict, prefaced by the following: "In the absence of a statement of defense, and since [Shlomo] did not appear for the hearing, despite receiving service of the summons outside of the border . . . , I order [Shlomo] to pay the plaintiffs . . . ." However, no confirmation of delivery is attached to the Israeli court's file or made an exhibit to the transcript of the hearing.

3. <u>The certificate of service</u>. The record also includes a copy of two sides of an untranslated certificate of service directed to a "Shlomo Hemo" (not Hamo), at "510 Hwy 17 N. #AA, Surfside Beach, S.C. 29577, U.S.A.," bearing an illegible

signature and no clearly ascertainable service date. The parties refer to the document as "exhibit B2." At the bottom of exhibit B2 is a statement signed by Yael Simchi, Advocate, dated September 11, 2012, stating, "I hereby certify that the copy above is a true copy of both sides of a double-sided certification of service, the original of which was presented to me." Simchi is identified as the "Israeli Supervisor of the Implementation of the [Memorandum of Understanding] signed by the Government of the United States and the Government of the State of Israel for Cooperation in Child Support Enforcement."[2] Simchi makes no representations about the contents of the alleged certification of service or its origin. Exhibit B2 is attached to an affidavit executed by Sara, in which she states that the exhibit is "the original certification of service" signed by Shlomo. Sara's affidavit and exhibit B2 were attached to amended pleadings filed by the Attorney General shortly after the Israeli attorney who testified on Shlomo's behalf was deposed.

## B.    Shlomo's evidence

Conversely, Shlomo argues that he presented sufficient evidence to demonstrate that he was never properly served. Shlomo argues that that no certificate of service was attached to the Israeli court's file as Rule 495 requires, the alleged certificate of service is suspect, and his testimony supports the trial court's determination that he was not served.

Shlomo testified that after leaving Israel he lived in Myrtle Beach, South Carolina, for a few months in 1992 until the beginning of September 1992, when he moved to Galveston. Until he received the Attorney General's notice of the

---

[2] In his brief, Shlomo asserts that Simchi is "the attorney trying to obtain enforcement of the Israeli judgment in Texas" and notes that her statement is made over 19 years after the Israeli judgment was entered.

registration of the Israeli judgment against him, Shlomo was unaware of the proceedings in Israel. Shlomo also testified that he was never served with any papers from Israel, and denied ever talking to Sara and telling her that he signed any papers for the Israeli proceeding prior to the date of the judgment. Further, although Sara came to the United States to visit Amos at one time in 1999 or 2000, Shlomo testified that she never told him that she wanted anything from him.

Shlomo further testified that he had never lived or worked at 510 Highway 17 North in Surfside Beach, the address on the alleged certificate of delivery. When shown Google Maps screenshots of that address, Shlomo stated that there was a bowling alley and a fast food establishment at that location, and he often ate lunch there when he was working as a delivery driver in the area. Shlomo testified he was never served with any papers at the Surfside Beach address. Further, Shlomo specifically testified that, from November 16, 1992 through June 21, 1993—the time frame between when the Israeli summons was prepared and the date of the Israeli court's judgment—he lived in Galveston. Shlomo also denied ever seeing the alleged certificate of delivery before it was filed in this case and denied that the signature on the card was his.[3]

As noted above, Rule 495 requires proof of delivery, and the proof of delivery must be attached to the court's file. The record contains no evidence, however, that the alleged certificate was ever made part of the Israeli court's file. Instead, the Attorney General points to the transcript of the Israeli hearing in which the advocate "submit[ted] the confirmation" and Sara testified that Shlomo told her he received the claim documents and it was his signature on the confirmation. The Israeli judge relied on these statements in holding that Shlomo was served but

---

[3] Moreover, although Shlomo acknowledged that a relative of his had held a liquor license at one of the businesses at the Surfside Beach location at one time, that relative's last name was Hemo, not Hamo.

failed to appear. But no certificate of service is made an exhibit to the hearing, so its contents cannot be determined. Further, Shlomo submitted a copy of the contents of the Israeli court's file, obtained by an Israeli family law attorney from the Israeli court clerk, and the file contains no certificate of service.

Additionally, the purported certificate of service is untranslated, addressed to a "Shlomo Hemo," and contains an illegible signature. The only verification of the document is a third party's statement that the document is a "true and correct copy of a double-sided certification of service" and Sara's affidavit, which Shlomo's testimony contradicts. Shlomo also testified that the certificate was directed to an address where he never lived or worked, was sent at a time when he was not even present in the state, and was not signed by him.[4]

## C. The trial court's findings of fact

Additionally, the trial court made fifty-three findings of fact that are supported by the record and are not specifically challenged by the Attorney General. Unchallenged findings of fact are binding on an appellate court unless the contrary is established as a matter of law or if no evidence supports the findings. *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 696 (Tex. 1986); *In re M.L.W.*, 358 S.W.3d 772, 774 (Tex. App.—Texarkana 2012, no pet.).

Some of the trial court's findings are based on its resolution of conflicting testimony in Shlomo's favor, but others are based on the Israeli record. Among

---

[4] The Attorney General argues that Shlomo's complaint that the certificate of delivery is not in the court's file, as Rule 495 requires, misses the mark because, in a collateral attack on a foreign judgment, technical defects in service are permissible as long as they do not "rise to the level of a due process violation that would render the default judgment void." *See PNS Stores, Inc. v. Rivera*, 379 S.W.3d 267, 273–74 (Tex. 2012). But *PNS* is distinguishable because in that case the only complaints were technical defects in service—such as the citation's failure to list the time of service, the service agent, and whether the citation had been on file for ten days preceding the default judgment. *See id.* at 273. In this case, Shlomo asserts that he was never served and that his due process rights were violated.

17

other things, the trial court found that Shlomo was never served with any process or papers for the underlying proceeding in Israel, the Attorney General filed no proof of service of process in its initial filing, the Israeli court's file contains no proof of service, delivery confirmation, or proof of delivery; the file contains no signature of Shlomo Hamo; and a signature is required of a person being served by mail under the law of Israel.

As to exhibit B2, which the trial court refers to as the "Postal Card," the trial court found, among other things, that the Postal Card purports to give notice to a Mr. Hemo, not Shlomo Hamo; does not include a confirming mail receipt; does not bear any postal stamp or postal seal; has no court stamps or seals indicating that it was filed in the Israeli court's file; has no date of delivery or date of initial mailing; is not contained in the Israeli court's file; and the Attorney General offered no certification of the Israeli court clerk that the Postal Card is in fact contained in the Israeli court's file.

Further, the trial court found that Shlomo has lived in Galveston since after Labor Day in 1992, and that he lived in Myrtle Beach, South Carolina, from the beginning of 1992 until the beginning of September 1992; the registration alleged that Shlomo was served at 510 Highway 17 North #AA, Surfside Beach, South Carolina; Shlomo was familiar with that address, which is a shopping center; Shlomo did not reside or work at that address and was not served with process there; Shlomo did not submit himself to the jurisdiction of Israel by consent; he did not enter a general appearance in Israel; he had no knowledge of any suit in Israel while it was pending; and he was not officially notified about the judgment after its entry in Israel.

On this record, the trial court could have resolved the conflicts in the evidence to conclude that Shlomo had no notice of Sara's support claim in the

Israeli court and was never served with process consistent with Israeli law. When presented with conflicting evidence, the trial court may believe one witness and disbelieve others, and it may resolve inconsistencies in the testimony of any witness. *McGalliard*, 722 S.W.2d at 697. Moreover, once Shlomo presented probative evidence that he was not served, any presumption in favor of the judgment no longer applied. *See Alfonso v. Skadden*, 251 S.W.3d 52, 55 (Tex. 2008) ("Because Skadden's affidavit and testimony affirmatively revealed a jurisdictional defect, the court of appeals should not have presumed otherwise.").

Thus, recognizing that it is Shlomo's burden to establish one or more of the statutory defenses to registration, we conclude that the evidence amply supports the trial court's judgment. Accordingly, we hold that the trial court did not err in rendering judgment that Shlomo was never served with process or given notice of the underlying proceeding in Israel and was denied due process in that proceeding. *See* Tex. Fam. Code § 159.607; *In re M.L.W.*, 358 S.W.3d at 776 (affirming trial court's order to vacate registration of wife's default divorce obtained in Michigan when husband demonstrated that he was not properly served under Michigan law). We overrule the Attorney General's third issue.

### Conclusion

We overrule the Attorney General's issues and affirm the trial court's judgment.

/s/     Ken Wise
        Justice

Panel consists of Chief Justice Frost and Justices Jamison and Wise (Frost, C.J., concurring).

19