

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-20-00368-CV

**IN THE INTEREST OF X.J.R.**, A.W.R., Z.N.B, L.K.B., and G.E.B., Children

From the 408th Judicial District Court, Bexar County, Texas
Trial Court Cause No. 2018PA01964
Honorable Angelica Jimenez, Judge Presiding

Opinion by:     Patricia O. Alvarez, Justice

Sitting:        Rebeca C. Martinez, Chief Justice
                Patricia O. Alvarez, Justice
                Irene Rios, Justice

Delivered and Filed: January 13, 2021

AFFIRMED

Appellant Mom appeals the trial court's order terminating her parental rights to her children, X.J.R., A.W.R., Z.N.B, L.K.B., and G.E.B.[i] Mom asserts that because the trial court did not have sufficient grounds to extend the statutory case dismissal deadline, it lacked jurisdiction to terminate her parental rights.

Appellant Dad, father of Z.N.B., L.K.B., and G.E.B., asserts the evidence is neither legally nor factually sufficient to support the alleged statutory grounds for termination.

For the reasons given below, we affirm the trial court's order.

---

[i] To protect the minors' identities, we refer to Mom, Dad, and the children using aliases. *See* TEX. R. APP. P. 9.8.

## BACKGROUND

X.J.R. and A.W.R. are Mom's oldest children.[ii]  In 2013, when X.J.R. and A.W.R. were five and three years old respectively, Mom began a romantic relationship with Dad.  Mom and Dad had three children together: Z.N.B., L.K.B., and G.E.B.  All five children were removed from their home after X.J.R. and A.W.R. complained of physical abuse by Dad.  The children had also seen Dad be abusive toward Mom, and Mom was unable to keep the children safe.

### JURISDICTION TO TERMINATE MOM'S PARENTAL RIGHTS

Mom does not challenge the trial court's statutory grounds or best interests of the children findings.  Instead, she argues the trial court lost jurisdiction by failing to meet the statutory deadline to commence trial, and the trial court failed to make written findings on the extraordinary circumstances necessary to extend the statutory deadline.  We begin with her first issue.

To support her first issue, Mom cites Family Code section 263.401:

> (a) Unless the court has commenced the trial on the merits or granted an extension under Subsection (b) or (b-1), on the first Monday after the first anniversary of the date the court rendered a temporary order appointing the department as temporary managing conservator, the court's jurisdiction over the suit affecting the parent-child relationship filed by the department that requests termination of the parent-child relationship or requests that the department be named conservator of the child is terminated and the suit is automatically dismissed without a court order. Not later than the 60th day before the day the suit is automatically dismissed, the court shall notify all parties to the suit of the automatic dismissal date.

TEX. FAM. CODE ANN. § 263.401; *In re H.B.C.*, No. 05-19-00907-CV, 2020 WL 400162, at *12 (Tex. App.—Dallas Jan. 23, 2020, no pet.) (mem. op.); *In re K.B.*, No. 09-19-00239-CV, 2019 WL 6598618, at *3 (Tex. App.—Beaumont Dec. 5, 2019, no pet.) (mem. op.).  However, both trial commencement and lawful extensions guard against jurisdictional deficiency.  *See* TEX. FAM.

---

[ii] Respondent-Father G.R. was included in the Department's petition, but he did not appeal.

CODE ANN. § 263.401; *In re H.B.C.*, 2020 WL 400162, at *12; *In re K.B.*, 2019 WL 6598618, at *3.

## A.    Automatic Dismissal After February 29, 2020

On August 30, 2018, the Department of Family and Protective Services petitioned to terminate Mom's and Dad's parental rights to all their children.  On that date, the trial court signed an order designating the Department as the children's temporary sole managing conservator, which set the deadline to commence trial as September 3, 2019.  *See* TEX. FAM. CODE ANN. § 263.401(a).[iii]  The trial court extended the deadline by 180 days, which set the deadline at March 2, 2020.  *See id.* § 263.401(b).[iv]

Mom argues that the trial court's extended deadline of February 29, 2020, was breached when trial did not take place on February 18, 2020, as planned, and the case continued after the end of the month.  She argues the trial on the merits did not actually commence on February 18, 2020, and that the trial court therefore had no further jurisdiction to render a termination order after February 29, 2020.  The State agrees that if trial did not commence on February 18, 2020, the trial court would have lost jurisdiction to enter any order besides dismissal after February 29, 2020.  The State argues trial commenced before the deadline.

Both parties cite examples of when bench trials commenced and recessed in family law cases.  *See In re R.J.*, 579 S.W.3d 97, 109 (Tex. App.—Houston [1st Dist.] 2019, pet. denied); *In re H.B.C.*, No. 05-19-00907-CV, 2020 WL 400162, at *13–14 (Tex. App.—Dallas Jan. 23, 2020, no pet.) (mem. op.); *In re R.F., Jr.*, No. 04-17-00582-CV, 2018 WL 1308542, at *1 (Tex. App.—

---

[iii] In its order resetting the first trial date, the trial court included an original case expiration date of September 2, 2019. Because September 2, 2019, was a holiday, the deadline became September 3, 2019.  TEX. R. CIV. P. 4; *Bartee v. Bartee*, No. 11-18-00017-CV, 2020 WL 524909, at *3 n.3 (Tex. App.—Eastland Jan. 31, 2020, no pet.) (mem. op.). The trial court then extended the case for 180 days, which would have expired on March 2, 2020, rather than the February 29, 2020, date that the trial court listed in its order.  For the purposes of this appeal, the discrepancy is immaterial.

[iv] Parties referred to February 29, 2020, as the extended deadline date given by the trial court in its written order.

San Antonio Mar. 14, 2018, no pet.) (mem. op.). In *In re R.J.*, trial was considered to have commenced after the court called the case, witnesses were sworn, parties announced, and the first witness began to testify. *In re R.J.*, 579 S.W.3d at 109. But these circumstances did not reflect the minimum required to commence a trial. *See id.* at 110. Rather, the *R.J.* court cited *In re D.S.*, 455 S.W.3d 750, 753 (Tex. App.—Amarillo 2015, no pet.), for its proposition that "'commencement of trial' means, at a minimum, that parties have been asked to make their respective announcements, and trial court has ascertained whether any preliminary matters need to be considered." *In re R.J.*, 579 S.W.3d at 110 (quoting *In re D.S.*, 455 S.W.3d at 753).

Here, the parties announced ready and gave opening statements on February 18, 2020, before the trial court recessed. Under *In re R.J.*, these proceedings met the minimum threshold for commencing a trial. *See id.* Therefore, the trial court did not automatically lose jurisdiction to render an order after its extended deadline.

**B.      Automatic Dismissal After September 2, 2019**

In her second issue, Mom argues that the trial court did not explicitly state in its written order that it found extraordinary circumstances to extend the original mandatory dismissal deadline of September 2, 2019. She correctly states that Family Code section 263.401 requires a finding of extraordinary circumstances to extend the mandatory dismissal deadline. *See* TEX. FAM. CODE ANN. § 263.401; *In re M.T.R.*, 579 S.W.3d 548, 565 (Tex. App.—Houston [14th Dist.] 2019, pet. denied).

But as the State argues, there is no record of discussion with the court about the extension nor record of any objection to the extension. *Cf. Simon v. State*, 525 S.W.3d 798, 799 (Tex. App.—Houston [14th Dist.] 2017, no pet.) (presumption of regularity); *see also In Matter of D.B.*, 457 S.W.3d 536, 538 (Tex. App.—Texarkana 2015, no pet.) (same); *In re E.H.*, 450 S.W.3d 166, 173 (Tex. App.—Houston [14th Dist.] 2014, pet. denied) (presuming regularity in the judgment).

Without record of any objection to this continuance and extension, Mom waived her argument on appeal. *See* Tex. R. App. P. 33.1(a) (defining waiver); *In re M.T.R.*, 579 S.W.3d at 565.

**BASES FOR TERMINATING DAD'S PARENTAL RIGHTS**

In his sole issue, Dad argues the evidence was not legally or factually sufficient to support the trial court's statutory grounds findings.

## A. Evidence Required, Standards of Review

The evidentiary standards[1] the Department must meet and the statutory grounds[2] the trial court must find to terminate a parent's rights to a child are well known, as are the legal[3] and factual[4] sufficiency standards of review. We apply them here.

## B. Statutory Ground Finding Required

Generally, a single statutory ground finding, when accompanied by a best interest of the child finding, is sufficient to support a parental rights termination order. *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003); *In re R.S.-T.*, 522 S.W.3d 92, 111 (Tex. App.—San Antonio 2017, no pet.). The Department argues that the evidence was sufficient to support the trial court's finding on grounds (D), (E), and (O). Because grounds (D) and (E) implicate due process and due course of law requirements, we "must provide the details of [our] analysis" for either of these grounds which we affirm. *See In re N.G.*, 577 S.W.3d 230, 237 (Tex. 2019).

We begin with ground (D). *See* Tex. Fam. Code Ann. § 161.001(b)(1)(D).

## C. Section 161.001(b)(1)(D)

Subsection (D) allows for termination of parental rights if, before the child was removed, *see In re R.S.-T.*, 522 S.W.3d at 109 (relevant period), the parent "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child," Tex. Fam. Code Ann. § 161.001(b)(1)(D). In the context of

the statute, "'endanger' means to expose to loss or injury; to jeopardize." *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987).

"A child is endangered when the environment creates a potential for danger that the parent is aware of but consciously disregards." *In re S.R.*, 452 S.W.3d 351, 360 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). "[A] parent need not know for certain that the child is in an endangering environment; awareness of such a potential is sufficient." *In re R.S.-T.*, 522 S.W.3d at 109 (alteration in original) (quoting *In re S.M.L.*, 171 S.W.3d 472, 477 (Tex. App.—Houston [14th Dist.] 2005, no pet.)).

"[E]vidence of criminal conduct, convictions, or imprisonment is relevant to a review of whether a parent engaged in a course of conduct that [created an environment that] endangered the well-being of the child." *In re S.R.*, 452 S.W.3d at 360–61.

"[A] single act or omission" may support terminating a parent's rights under subsection (D). *In re R.S.-T.*, 522 S.W.3d at 109 (citing *In re R.D.*, 955 S.W.2d 364, 367 (Tex. App.—San Antonio 1997, pet. denied)).

## D.     Section 161.001(b)(1)(E)

Under subsection (E), a parent's rights may be terminated if the parent "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." TEX. FAM. CODE ANN. § 161.001(b); *In re R.S.-T.*, 522 S.W.3d at 109. This subsection applies to conduct occurring both before and after removal. *See In re L.J.G.*, No. 04-19-00347-CV, 2019 WL 6107936, at *2 (Tex. App.—San Antonio Nov. 18, 2019, pet. denied) (mem. op.).

For a parent to endanger a child, "it is not necessary that the [parent's] conduct be directed at the child or that the child actually suffers injury." *Boyd*, 727 S.W.2d at 533. "[R]ather, a child is endangered when the environment or the parent's course of conduct creates a potential for

danger which the parent is aware of but disregards." *In re R.S.-T.*, 522 S.W.3d at 110 (quoting *In re S.M.L.*, 171 S.W.3d 472, 477 (Tex. App.—Houston [14th Dist.] 2005, no pet.)).

**E.      Witnesses at Trial**

During the bench trial, the trial court heard testimony from the Department's investigator, case workers, an assistant, a volunteer, a therapist, Mom, and Dad.  The trial court was the "sole judge[] of the credibility of the witnesses and the weight to give their testimony."  *See City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005); *cf. In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (per curiam).  We briefly recite some of the evidence.

*1.      Dad Abused the Children*

The children in this case were removed because of X.J.R. and A.W.R.'s allegations that Dad physically abused them.  On August 17, 2018, X.J.R. made an outcry of physical abuse alleging that Dad punched him in the stomach.  Both X.J.R. and A.W.R. reported that Dad, spanked them with a belt, hit them in the face and choked them, and kept an unsecured firearm in the home.

Dad denied the allegations, pointing to the dearth of documentary evidence such as photographs or videos of injuries that could support the children's reports.  He argued that the children's great-grandmother did not approve of him and coached the children to accuse him of physical abuse.

X.J.R. and A.W.R. were physically terrified of Dad.  Dr. Arambula, the therapist who worked with A.W.R., concluded that A.W.R. would end up in a psychiatric hospital if he were reunited with Dad.  The assigned caseworker and her assistant both testified that Dad had been told not to be present in the parking lot of Mom's visits, but workers saw him there anyway.  The boys also saw him and were very frightened.  The boys reported Dad told them that he was sent to prison for killing someone, and they knew that he had a gun.  Dad had gone to prison for auto theft.

Dad denied telling them that he had been to prison, and he denied having a gun. When confronted with a previous conviction for felony possession of a firearm in Michigan, he testified that no one ever caught him with a gun, and that he merely pled to the charge as part of a plea bargain.

### 2.  *Dad Abused Mom*

Dad also physically abused Mom, which the children witnessed. The court-appointed children's advocate testified that the younger children talked about seeing their parents fight physically. Mom admitted that the children were not lying about what they witnessed. It is well-established that such abuse could "produce an environment that endangers the physical or emotional well-being of a child." *See In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.). For this reason, the Department expressed the importance of Dad and Mom not being together, but workers continued to see them together over the course of the case. At one point, Dad showed a ring on Mom's finger and announced their engagement. Mom remained silent. Later, at trial, he explained that he was being sarcastic about the engagement because their case worker had asked them several times whether they were in a romantic relationship. He testified that they were not actually engaged or living together, though he admitted referring to Mom's house as his home.

### 3.  *Sufficient Evidence for Ground (D)*

Considering all the evidence under the appropriate standards of review, we conclude the trial court could have formed a firm belief or conviction that Dad's course of conduct met statutory ground (D). *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D). Dad reportedly punched X.J.R. in the stomach, spanked X.J.R. and A.W.R. with a belt, hit them in the face and choked them, and he was abusive toward Mom.

*4.     Sufficient Evidence for Ground (E)*

We also conclude that the trial court could have formed a firm belief or conviction that Dad's course of conduct met statutory ground (E). *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(E). In addition to the abuse that occurred before removal, Dad would appear in the parking lot during Mom's post-removal visits with X.J.R. and A.W.R., which was threatening to the boys. When he visited Z.N.B., L.K.B., and G.E.B., certain aspects of the visits were successful: he paid attention to the children, played with them, and controlled bad behavior. However, other aspects of his visits raised concerns, such as when he disciplined too quickly or forcibly, or when Z.N.B. was screaming, "don't hit me." Dad argued that Z.N.B. learned this behavior at the children's shelter and denied having hit her. Nevertheless, the Department explained to Dad that if he did not complete his assigned services and meet personal goals, such as managing his anger, he would risk termination of his parental rights. Over the course of Dad's case, he began services, but did not complete them. Dad expressed anger, frustration, and blame to the employees and volunteers he encountered at hearings and visits, and he did not show improvement.

Because a single ground finding, coupled with a best interest finding, is sufficient to support an order terminating a parent's rights, we need not address Dad's subsection (O) challenge. *See In re A.V.*, 113 S.W.3d at 362.

**F.     Best Interests of the Children**

The Family Code statutory factors[5] and the *Holley* factors[6] for the best interest of a child are well known. Dad does not challenge the sufficiency of the evidence supporting the trial court's best interests of the children findings. *See* TEX. FAM. CODE ANN. § 161.001(b)(2).

## CONCLUSION

Because the trial court retained jurisdiction to render its final order and because the evidence was legally and factually sufficient to support the trial court's findings by clear and

convincing evidence (1) of at least one predicate ground for termination and (2) that termination of Mom's and Dad's parental rights is in the best interest of the child, we affirm the trial court's order.

Patricia O. Alvarez, Justice

---

[1] <u>Clear and Convincing Evidence</u>.  If the Department moves to terminate a parent's rights to a child, the Department must prove by clear and convincing evidence that the parent's acts or omissions met one or more of the grounds for involuntary termination listed in section 161.001(b)(1) of the Family Code and that terminating the parent's rights is in the best interest of the child.  TEX. FAM. CODE ANN. § 161.001(b); *In re J.F.C.*, 96 S.W.3d 256, 261 (Tex. 2002).  The same evidence used to prove the parent's acts or omissions under section 161.001(b)(1) may be used in determining the best interest of the child under section 161.001(b)(2).  *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002); *In re D.M.*, 452 S.W.3d 462, 471 (Tex. App.—San Antonio 2014, no pet.); *see also* TEX. FAM. CODE ANN. § 161.001(b).  The trial court may consider a parent's past deliberate conduct to infer future conduct in a similar situation.  *In re D.M.*, 452 S.W.3d at 472.

[2] <u>Statutory Grounds for Termination</u>.  The Family Code authorizes a court to terminate the parent-child relationship if, inter alia, it finds by clear and convincing evidence that the parent's acts or omissions met certain criteria.  *See* TEX. FAM. CODE ANN. § 161.001(b).  Here, the trial court found Dad's course of conduct met the following criteria or grounds:

> (D) knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child;
>
> (E) engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child; [and]
> . . . .
>
> (O) failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child.

*Id.* § 161.001(b)(1).

[3] <u>Legal Sufficiency</u>.  When a clear and convincing evidence standard applies, a legal sufficiency review requires a court to "'look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true.'"  *In re J.L.*, 163 S.W.3d 79, 85 (Tex. 2005) (quoting *In re J.F.C.*, 96 S.W.3d at 266).  If the court "'determines that [a] reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true,'" the evidence is legally sufficient. *See id.* (quoting *In re J.F.C.*, 96 S.W.3d at 266).

[4] <u>Factual Sufficiency</u>.  Under a clear and convincing standard, evidence is factually sufficient if "a factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations."  *In re C.H.*, 89 S.W.3d at 25; *accord In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006).  We must consider "whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding."  *In re J.F.C.*, 96 S.W.3d at 266; *accord In re H.R.M.*, 209 S.W.3d at 108.

[5] <u>Statutory Factors for Best Interest of the Child</u>.  The Texas legislature codified certain factors courts are to use in determining the best interest of a child; the factors are listed in the statute.  TEX. FAM. CODE ANN. § 263.307(b).  Because Dad does not challenge the trial court's findings on the best interests of the children, we do not recite the factors here.

[6] *Holley* Factors.  The Supreme Court of Texas identified several nonexclusive factors to determine the best interest of a child in its landmark case *Holley v. Adams*.  *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976); *accord In re E.N.C.*, 384 S.W.3d 796, 807 (Tex. 2012) (reciting the *Holley* factors).  Because Dad does not challenge the trial court's findings on the best interests of the children, we do not recite the factors here.